[Civ. No. 22559. Second Dist., Div. One. Feb. 3, 1958.]

D. ELLEN HENRY, Appellant, v. MAE S. WEINMAN et al., Respondents.

N. E. Youngblood and Anthony T. Carsola for Appellant.

Eugene S. Ives for Respondents.

HERNDON, J. pro tem.*—Plaintiff appeals from a judgment that she recover nothing upon her alleged causes of action seeking damages for breach of contract and for fraud. The cause was tried before the court without a jury. In its findings of fact, the trial court found that the alleged contract was nonexistent and that the allegations of fraud were untrue.

Plaintiff and Alexander Dollar, hereinafter sometimes referred to as the testator, were married in 1945. Alexander Dollar died on June 21, 1952, leaving a will which antedated his marriage to plaintiff. It is undisputed that as to plaintiff

*Assigned by Chairman of Judicial Council.

the will was revoked by the subsequent marriage, section 70 of the Probate Code being clearly applicable.

By the terms of his will dated December 8, 1942, testator left his entire estate to the defendant Mae Weinman, and named her executrix. Testator's former wife, Ruth, who had died in 1942, was defendant Weinman's daughter. It appears that the relationship between the testator and his mother-in-law always was a very close one and that a substantial part of his estate had its origin in gifts from Mrs. Weinman to her daughter, Ruth, and was inherited by him upon Ruth's death. After Alexander Dollar's death, his will was found in his safety deposit box and was contained in an envelope bearing the inscription in testator's handwriting: "Not Valid. It is my intention to replace this existing Will with one that will be current and up to date. Alexander Dollar, 5-29-52."

On July 28, 1952, the will was admitted to probate without contest and Mrs. Weinman was appointed executrix. Plaintiff appeared as a witness at the probate hearing and testified to her wish that the will be admitted. It is undisputed that the testator's surviving heirs, other than plaintiff, were certain brothers and sisters and a nephew. It is further agreed that had the will been successfully contested and denied probate, distribution of the estate under the laws of succession would have given plaintiff all the community property and one-half of the separate property, with the balance going to the brothers, sisters, and nephew. Defendant Weinman would have taken nothing from the estate under the laws of succession. Although all the heirs were given due notice of the proceedings, no contest was filed.

At the trial of the instant action, plaintiff testified that she was induced to refrain from contesting the will by certain promises made by defendant Weinman to the effect that if plaintiff would allow the will to be probated without contest Mrs. Weinman would turn over to her all of the distributable estate. According to plaintiff's testimony, this promise was first made by Mrs. Weinman in the course of a conference with the defendant Mergenthaler at the latter's law office, prior to the probate hearing and some two weeks after the will was found.

Mr. Mergenthaler, the attorney who filed the petition for probate of the will, was joined as a party defendant in the cause of action alleging fraud. It is undisputed that he had been Mrs. Weinman's attorney for many years. He had acted

as the attorney in the settlement of the estate of her daughter, Ruth, and of her former husband, William Sampson.

Plaintiff further testified that on July 28, 1952, she went to court with Mr. Mergenthaler and Mrs. Weinman to attend the hearing on the petition for probate of the will, and that immediately before the hearing, while waiting in an antechamber of the courtroom, Mrs. Weinman repeated her promise to turn over the assets of the estate to plaintiff. According to plaintiff, Mr. Mergenthaler was present at the time of this conversation.

Mr. Mergenthaler's testimony is substantially at variance with that of plaintiff. He denied that Mrs. Weinman was present at any conference with plaintiff at his office before the probate hearing. He testified that plaintiff came alone to his office to deliver the original will a few days after Mr. Dollar's death. His version of his conversation with her on that occasion was as follows:

"I told Mrs. Dollar that in my opinion the inscription on the envelope did not revoke the will; where a testator made a will before marriage and then died without making a provision in the will for any after acquired wife, that the will was good except as to the new wife; that as to her, it was invalid. I told her at the time that most of Alex's property had been given to Ruth Dollar, the daughter of Mrs. Weinman, by Mrs. Weinman, and under Ruth's will, Alex Dollar received about $42,000 of property from Ruth Dollar's estate and consequently there was a great amount or I thought there was a great amount of separate property in the estate.

"I also informed her that Alex Dollar had left a number of brothers and sisters in the east; I think some seven or eight; and that if the will had been revoked by that writing, the brothers and sisters would be entitled to one-half the separate property, and that if she contested the probate of the will and was successful in establishing that writing on the envelope as a revocation of the will, they would be entitled to one-half the separate property; that she would be entitled to all of the community property and the other half of the separate property."

Mr. Mergenthaler testified that nothing was ever said about plaintiff's right to a family allowance and that the only conversation between plaintiff and Mrs. Weinman relating to distribution of the estate which he overheard occurred upon their return to his office immediately after the hearing in the probate court when the will was admitted. He related Mrs. Wein-

man's statement on that occasion, as follows: "They came to my office and Mrs. Weinman said that she regarded Ellen as her daughter; she had entertained Alex Dollar and Mrs. Dollar frequently at her Arrowhead house and she looked on Mrs. Ellen Dollar as her daughter. She stated that—'I don't care anything about this estate and I intend to give it to Mrs. Dollar.'" Later on the same day, Mergenthaler wrote plaintiff a letter confirming this conversation and containing the following paragraph:

"As Mrs. Weinman informed you today, it is her intention to turn over to you any interest that she might have in Alex' estate under the will, but not as a creditor. I pointed out there was a possibility there might be a gift tax on any amount of the estate which would pass under an assignment from Mrs. Weinman to you and I thought that if there was such a tax, it should be paid by you and you agreed to this idea."

As above indicated, the will was admitted to probate and letters testamentary were issued to Mrs. Weinman on July 28, 1952. No contest after probate was filed. Between July of 1952 and October of 1953, such proceedings were taken in the probate matter that by the latter date the estate of Alexander Dollar was ready for distribution. Early in October of 1953, Mr. Mergenthaler drafted a document entitled, "Agreement as to Distribution of Assets." He testified that it was his purpose in drafting the agreement to provide for a distribution of assets to plaintiff equal in value to the interest which she would have been entitled to receive under the laws of succession. In drafting the agreement he utilized his personal knowledge of the source of the assets and their character as separate or community property.

Mr. Mergenthaler mailed the agreement to Mrs. Weinman at her home at Lake Arrowhead. Mrs. Weinman signed it and asked her son-in-law, Paul Pritchett, to take it to plaintiff for her signature. Plaintiff testified that Pritchett told her the agreement was "for record purposes" and that Mrs. Weinman would return the assets to her after the estate was settled.

Thereafter, Mr. Mergenthaler prepared Mrs. Weinman's final account and report as executrix, and her petition for distribution. Pursuant to the agreement, a decree of distribution was accordingly entered on November 4, 1953. No appeal was taken from this decree and it became final long before the commencement of this action. Mr. Mergenthaler wrote a letter to plaintiff, dated November 19, 1953, enclosing a copy of the decree of distribution, and a receipt for her distributive share, which he requested her to sign and return. In this

letter he undertook to explain in some detail the apportionment of the assets, the adjustment of tax payments, etc. A few days later Mergenthaler mailed plaintiff a copy of the final account, report and petition for distribution.

Although plaintiff refused to sign the receipt for distribution, it appears that she received the assets given her by the decree. According to plaintiff's testimony, she and her husband, John Henry, visited Mrs. Weinman at the latter's home during December, 1953. On this occasion plaintiff inquired when she would receive the remainder of the estate, whereupon, according to plaintiff, Mrs. Weinman became annoyed and indicated that "she hadn't made up her mind."

On February 28, 1955, plaintiff filed her original complaint for declaratory relief, breach of contract, fraud, conspiracy, account, and money damages. The action went to trial on the third amended and supplemental complaint which, according to its prayer, sought money damages for breach of contract and fraud.

In substance, the complaint alleged that plaintiff agreed not to contest the will of Alexander Dollar, refrained from exercising her right to contest, and gave up her right to a family allowance in reliance upon promises and representations made by Mrs. Weinman, by her attorney, Mergenthaler, and by her son-in-law, Pritchett, to the effect that, after distribution, all assets of the estate would be delivered over to plaintiff. The fraud count alleged additionally that these promises and representations were made falsely and with the intent to deceive.

Although the third amended complaint is cast in the form of an action at law for damages, plaintiff's attorney, at the beginning of the trial, characterized the case as "an independent action in equity based upon extrinsic fraud." Both at the beginning and during the trial, defendant's counsel demanded that plaintiff elect between the contract and fraud causes of action. Addressing the court at the conclusion of the trial, defendant's counsel stated his understanding "that the plaintiffs have elected now to proceed only on the contract," to which the trial judge responded, "It is certainly the court's understanding." Mr. Youngblood then commented, "That does not mean, however, Your Honor, that we do not contend there was fraud involved in connection with the contract."

The detailed findings of fact found untrue the essential allegations of the complaint with respect to (1) the existence of a contract, (2) plaintiff's reliance upon the alleged promises

and representations, (3) the intent of the defendants to deceive and defraud plaintiff, and (4) resultant damage to plaintiff.

The essence of plaintiff's position on this appeal is that she is entitled to recover as a matter of law under the doctrine of promissory estoppel, and that the findings of fact of the trial court, insofar as they negate the essential elements of that doctrine, are without support in the evidence. Although it appears to us, from a review of the record, that appellant's theory of the case, as now advanced on this appeal, is substantially different from that presented by her in the trial court, we shall deal with her present contentions on their merits.

The doctrine of promissory estoppel is defined as follows in section 90 of the Restatement of Contracts: "A promise which the promisor should reasonably expect to induce action or forbearance of a definite and substantial character on the part of the promisee and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise." This doctrine is recognized in California and has been applied in a variety of factual situations. (*Burlingame* v. *Rowland,* 77 Cal. 315 [19 P. 526, 1 L.R.A. 829]; *Kinsell* v. *Thomas,* 18 Cal.App. 683 [124 P. 220]; *Churchill* v. *Russell,* 148 Cal. 1 [82 P. 440]; *Carpy* v. *Dowdell,* 115 Cal. 677 [47 P. 695]; *Seymour* v. *Oelrichs,* 156 Cal. 782 [106 P. 88, 134 Am.St.Rep. 154]; *Wilk* v. *Vencill,* 30 Cal.2d 104 [180 P.2d 351]; *Hunter* v. *Sparling,* 87 Cal.App.2d 711 [197 P.2d 807].)

It is settled that the existence of an estoppel is a question of fact, unless but one inference can be drawn from the evidence. (*General Motors Acceptance Corp.* v. *Gandy,* 200 Cal. 284 [253 P. 137]; 18 Cal.Jur.2d 413.) Basic elements of estoppel are reliance and injury. (*Estate of Jackson,* 112 Cal.App.2d 16 [245 P.2d 684]; Pomeroy's Equity Jurisprudence, 5th ed., vol. III, p. 230, § 812; 18 Cal.Jur.2d 410, § 12.) When, as in the instant case, the findings of fact of the trial court are attacked on the ground that they lack evidentiary support, the power of the appellate court begins and ends with the determination as to whether there is any substantial evidence to sustain the challenged findings (*Primm* v. *Primm,* 46 Cal.2d 690, 693 [299 P.2d 231]).

We conclude that the present record contains substantial evidence of facts and circumstances from which the trial court reasonably could infer and find that appellant did not suffer any substantial detriment as a result of re-

liance upon any promise or representation by the defendant. In the first place, it is to be noted that during the course of the probate proceedings appellant signed an agreement for distribution which gave her property equal in value to that which she would have gotten by way of a successful contest. ■ Appellant testified that when this agreement was presented to her by defendant Pritchett for her signature she objected that "it wasn't according to the way I had understood the distribution of the estate to be," but that she. signed the agreement in reliance upon Pritchett's assurance that "for record purposes it had to be that way" and that Mrs. Weinman would return the assets to her after the estate was settled. Pritchett's version of the conversation was somewhat different. He testified that in response to appellant's statement that she understood she was to receive all the assets of the estate, he said, "I do not know anything about that. You will have to get that information from Mrs. Weinman." Appellant's asserted reluctance to sign the agreement indicated recognition of the apparent inconsistency between the terms of the agreement and the terms of the alleged promise. The terms of the agreement and the fact that appellant signed it afforded the basis for an inference that appellant had not relied upon any inconsistent promises, representations, or understandings. ■ The trier of the facts is entitled to disbelieve all or any part of a witness' testimony, even though uncontradicted, if there is any rational ground for doing so. (*Hicks* v. *Reis,* 21 Cal.2d 654, 659 [134 P.2d 788]; *Blank* v. *Coffin,* 20 Cal.2d 457, 461 [126 P.2d 868]; *Hamilton* v. *Abadjian,* 30 Cal.2d 49, 53 [179 P.2d 804].) In these circumstances the trier of the facts was not bound to accept appellant's testimony as to her reliance.

■ But even if we could hold as a matter of law that appellant's reliance was conclusively established by her forbearance to contest the will, there would still remain the question of fact whether this forbearance resulted in any substantial detriment to appellant. Since appellant actually received property equal in value to that which she would have received either as a result of a successful will contest or through assertion of her unquestioned rights under section 70 of the Probate Code, it seems clear that the finding of the trial court that she suffered no detriment is substantially supported. Indeed, it appears that by the procedure followed appellant was saved the substantial costs, expenses, attorneys fees, delays and difficulties which a will contest would have entailed.

■ Appellant has argued that she suffered an additional detriment in that she failed to assert in the probate proceedings her right to a family allowance in reliance upon the so-called promise. The evidence does not compel a finding that she did so. The evidence is uncontradicted that there was no discussion of the subject of a family allowance between appellant and Mrs. Weinman or with Attorney Mergenthaler. Appellant's own testimony goes no further than to indicate that she was uninformed of her right to such an allowance. In short, the record does not establish as a matter of law that there was any such change of position on appellant's part as would call into play the doctrine which she now seeks to invoke.

Our conclusions, as above indicated, render it unnecessary for us to discuss respondent's further contentions: (1) that the so-called "promise" constituted nothing more than a declaration of intention to make a future gift; and (2) that the decree of distribution in the probate matter is res adjudicata. Appellant has not challenged the judgment insofar as it runs in favor of the defendants Mergenthaler and Pritchett.

The judgment is affirmed.

White, P. J., and Fourt, J., concurred.