[Civ. No. 25880.   Second Dist., Div. Three.   Oct. 24, 1962.]

GEORGE M. GREENE, Plaintiff and Appellant, v. DORIS WILSON et al., Defendants and Respondents.

Spiegel, Lincoff & Wolfson and Gerald G. Wolfson for Plaintiff and Appellant.

Beardsley, Hufstedler & Kemble, Charles E. Beardsley and Harry L. Hupp for Defendants and Respondents.

FORD, J.—On June 19, 1959, the plaintiff, George M. Greene, obtained a judgment in the amount of $16,635.65 against Gordon Wilson in an action on a promissory note dated February 14, 1947. Mr. Wilson and Doris Wilson were husband and wife from December 31, 1933, until the entry of a final judgment of divorce on December 11, 1956. Mr. Greene was not able to satisfy his judgment by recourse to assets of Gordon Wilson, there having been a return *nulla bona* with respect to the writ of execution. He brought the present action against Doris Wilson for the purpose of subjecting to his judgment real property and business assets received by Mrs. Wilson by virtue of the final judgment of divorce.[1] This appeal is from a judgment in favor of Mrs. Wilson.

It was determined in the interlocutory judgment in the divorce action that the community property of the Wilsons consisted of a residence and the furnishings therein, their personal effects, insurance on the life of Mr. Wilson and on the life of Mrs. Wilson, and two businesses theretofore known respectively as Tri-Color Laboratories and Tri-Color Multiprint. Reference will hereinafter be made to the businesses under the designation of Tri-Color Laboratories. The matter of the disposition of the community property was deferred until the time of the final judgment. In the final judgment of divorce the community property, other than Mr. Wilson's personal effects and the insurance on Mrs. Wilson's life, was awarded to Mrs. Wilson, except that a Mercury automobile which was a business asset was awarded to Mr. Wilson and he was ordered to pay the unpaid portion of the purchase price thereof. However, Mr. Wilson was given a lien in the sum of $25,000 on the assets of the businesses which lien was to be discharged by Mrs. Wilson by means of monthly payments in specified amounts. It was further ordered that Mrs. Wilson assume and pay all community obligations owed to Ona Kimball and hold Mr. Wilson harmless therefrom. A similar burden was placed on Mr. Wilson with respect to community obligations owed to Anna E. Wilson and Doris Seligman. Each was ordered to assume and pay one-half of certain income tax obligations.

---

[1] Pursuant to stipulation, the sum of $17,935.36 is being held in trust by the attorneys for the plaintiff awaiting the final determination of this case. That sum represents part of the money payable to Doris Wilson because of her subsequent sale of the business hereinafter described as Tri-Color Laboratories.

In the present action the trial court found in part as follows: 1. At the time of the rendition of the final judgment of divorce the equity in the residence was of a value of approximately $17,000, but the business known as Tri-Color Laboratories was insolvent, its condition being that "the debts exceeded the fair market value of the assets thereof, and said business was unable to meet its obligations as they became payable" and it "had no fair market value." 2. The lien in the amount of $25,000 in favor of Gordon Wilson has been satisfied and discharged, and the other obligations assumed and paid by Doris Wilson, pursuant to the final judgment of divorce and in satisfaction of certain tax liens on the business in excess of $21,500, exceeded the value of the assets awarded to her. 3. On numerous occasions during the pendency of the divorce action and during the pendency of the action against Mr. Wilson on the promissory note, the plaintiff Greene stated and represented to the defendant Doris Wilson and to her attorneys and to persons who later lent money to her that he intended to, and would, collect his claims only against Gordon Wilson, and that he would never assert any claim against Doris Wilson or any property she might acquire in the divorce action. 4. The plaintiff Greene knew that Doris Wilson, her attorneys and the persons who later lent money to her would rely on those statements and representations. 5. In reliance thereon, she and her attorneys made no attempt to protect her from that liability in the final judgment of divorce, and persons to whom the statements and representations were made "advanced money to and guaranteed loans to Doris Wilson in excess of $60,000.00." 6. In reliance on such statements and representations of the plaintiff Greene, Doris Wilson "purchased thousands of dollars of new equipment for Tri-Color Laboratories and made representations of her own financial condition to equipment sellers and trade creditors," on which representations such creditors relied. 7. In reliance on the plaintiff's statements and representations, Doris Wilson represented to the subsequent purchasers of the business that Mr. Greene had no claims against the business and the purchasers relied on such representations.[2]

[2]While there were other findings of fact in favor of the defendant Doris Wilson with respect to other matters of defense raised by her, it is not necessary to set them forth herein in view of the determination hereinafter expressed that the recited findings find sufficient support in the evidence and, under the applicable law, sustain the judgment of the trial court.

One of the conclusions of law drawn by the trial court was that the plaintiff Greene was "barred and prevented by the doctrine of promissory estoppel from enforcing the claim sued upon" against the defendant Doris Wilson.

As stated in *Mayberry* v. *Whittier*, 144 Cal. 322 [78 P. 16], at page 325: "It is clearly the general rule that upon a division of community property under a divorce decree the former husband and wife each take the part awarded subject to prior liens; and it has been held that the part awarded either wife or husband is subject to community debts not reduced to liens." (See also *Vest* v. *Superior Court*, 140 Cal. App.2d 91, 95 [294 P.2d 988].) Consequently, the plaintiff Greene was entitled to pursue the property awarded to Doris Wilson in the divorce suit for the purpose of subjecting it to the satisfaction of his judgment, unless there was conduct on his part of such a nature as to prevent his successful recourse to that remedy. (*Bank of America* v. *Mantz*, 4 Cal.2d 322, 326-327 [49 P.2d 279].)

The doctrine of promissory estoppel is recognized in this state. (*Drennan* v. *Star Paving Co.*, 51 Cal.2d 409, 413 [333 P.2d 757].) In section 90 of the Restatement of Contracts the doctrine is expressed as follows: "A promise which the promisor should reasonably expect to induce action or forbearance of a definite and substantial character on the part of the promisee and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise." (See also *Morrison* v. *Home Savings & Loan Assn.*, 175 Cal.App.2d 765, 768 [346 P.2d 917]; *Van Hook* v. *Southern Cal. Waiters Alliance*, 158 Cal.App.2d 556, 570 [323 P.2d 212]; *Henry* v. *Weinman*, 157 Cal.App.2d 360, 366 [321 P.2d 117]; *Graddon* v. *Knight*, 138 Cal.App.2d 577, 582-583 [292 P.2d 632]; *Wade* v. *Markwell & Co.*, 118 Cal. App.2d 410, 420 [258 P.2d 497, 37 A.L.R.2d 1363]; *Hunter* v. *Sparling*, 87 Cal.App.2d 711, 725 [197 P.2d 807]; 31 C.J.S., Estoppel, § 80.)[3] In *Drennan* v. *Star Paving Co.*, *supra*,

---

[3]Apropos with respect to the defendant Doris Wilson's position in the present case is the following statement found in *Fried* v. *Fisher*, 328 Pa. 497, at p. 501 [196 A. 39, at p. 42, 115 A.L.R. 147, at p. 150]: "Illustrative cases abound in the reports, especially since the more formal embodiment of the principle in section 90 of the Restatement. Its most frequent application has been to cases in which a person announces his intention of abandoning an existing right, and thereby leads another, relying thereon, to some action or forbearance. Such cases have sometimes been referred to as well-recognized exceptions to the general proposition that, in order to give rise to an estoppel, a representation must relate to an existing fact and not be merely an expression of opinion or a promise

51 Cal.2d 409, it is said at page 414: "The very purpose of section 90 is to make a promise binding even though there was no consideration 'in the sense of something that is bargained for and given in exchange.' (See 1 Corbin, Contracts 634 et seq.)'' ▓▓ Whether, in a particular case, such an estoppel exists is a question of fact, unless but one inference can be drawn from the evidence. (*Henry* v. *Weinman, supra,* 157 Cal.App.2d 360, 366.)

▓▓ There is substantial evidence in the record in this case in support of the defense of promissory estoppel. Mrs. Wilson testified with respect to several conversations she had had with Mr. Greene. After she heard that he had sued Mr. Wilson, she made a trip to Scottsdale, Arizona, about Easter in 1956 and spent several days with Mr. Greene and his mother in their home. She had known Mr. Greene since he was 11 years old and at one time he had lived with Mr. and Mrs. Wilson. In Scottsdale she told Mr. Greene the circumstances of her divorce litigation and that she was seeking all of the community property. She further testified as follows: "I told him . . . that I wanted to know from him what he was suing on, if he was suing me, if he was including Tri-Color in his suit, and he said, 'No,' he was just suing Gordon Wilson and that he was not going to sue me, he had turned the notes over to some attorneys . . . on a contingency basis. . . ." She also testified that Mr. Greene "repeated that he was not going to ever sue me for this money or include me in the suit or ever ask me for the money, or Tri-Color." The reason he gave was that "he felt Gordon Wilson owed it to him"; he mentioned that Mr. Wilson had induced him and his mother to loan him money and then had found various ways of avoiding repayment.

Prior to December 10, 1956, when Mr. Greene was in Los Angeles for the trial of his action against Mr. Wilson, Mrs. Wilson saw Mr. Greene on several occasions. She testified to a discussion which occurred at the home of an attorney, Mr. Henzie, who was representing her in the divorce suit. In Mr. Henzie's presence, Mr. Greene said that he was looking

---

of future performance. 'There is no rule more necessary to enforce good faith than that which compels a person to abstain from enforcing claims which he has induced others to suppose he would not rely on. The **rule** does not rest upon the assumption that he has obtained any personal gain or advantage, but on the fact that he has induced others to act in such a manner that they will be seriously prejudiced if he is allowed to fail in carrying out what he has encouraged them to expect.' *Faxton* v. *Faxon,* 28 Mich. 159, 161."

858

to Gordon Wilson alone for the money. Mr. Henzie said that he was asking him directly about the matter because it was a subject he would want to consider in the divorce proceedings if Doris Wilson was involved in the matter of the payment of the debt. At a later time, Mr. Greene telephoned her and said that he and his wife would not come to her home because they were returning to Scottsdale since his lawsuit with Mr. Wilson had been settled by an agreement for the payment of a sum of money in monthly instalments.

Pursuant to the final judgment of divorce Mrs. Wilson took over the operation of the business of Tri-Color Laboratories on December 11, 1956. In her opinion, at that time the assets had a value of approximately $54,000, but the business appeared to have ''no value, because of the net deficit, the net worth deficit of $27,000,'' exclusive of income tax liabilities of about $22,000. Approximately $38,000 was owed to one supplier of printing material for color prints. Large sums of additional capital were needed if the operation of the business was to continue. She borrowed $50,000 from a bank, the loan being guaranteed by three attorneys, two of whom later lent her the additional sum of $16,000. While the loan of $50,000 was repaid from moneys received in the subsequent sale of the business, she had not been able to repay the sum of $16,000 which she had borrowed. Over the period of her operation of the business she paid about $75,000 on account of conditional sales contracts for new equipment, the contracts being in the total amount of approximately $115,000. In addition, she satisfied income tax liens in the amount of approximately $21,000 which related to the years 1952-1955, inclusive. Mrs. Wilson testified that in making the loans, purchasing equipment, and paying accounts, she relied on Mr. Greene's prior statements that he was not making any claim against her or the assets she would acquire under the judgment of divorce. She did not know that Mr. Greene was making a claim against her or the assets of the business until the first part of February, 1959, when she saw a letter from his attorney ''in the escrow'' arising out of the transaction in which she was selling the business.

Mr. Blankenbaker, a certified public accountant, testified that the books of the business showed that, as of December 31, 1956, the excess of liabilities over assets was in the amount of $26,976. No obligation to Mr. Greene was recorded on the books as a liability of the business.

Mr. Gilbert, an attorney, testified that he met Mr. and Mrs.

Greene at the home of Doris Wilson in November or early in December, 1956, and saw them on several occasions within a week or ten days thereafter. On one occasion Mr. Greene said that he was in court on a lawsuit with Gordon Wilson. He further said that Mrs. Wilson had not been served in that action because he had told his attorneys to take no steps or proceedings against her in any way. Mrs. Wilson said that she appreciated this very much; that she thought that she might get the business as a result of the final hearing in her divorce action. Mr. Greene said to her, ''You needn't have any worry about that at all. I will never take any steps to try and collect any of this money from you or any property you might get.'' Either in the same or another conversation, Mr. Greene said that he hoped that she would get the business from Gordon Wilson; as far as he was concerned he could not think of anybody he knew to whom he would rather see something like that happen. Mrs. Wilson stated that she had been somewhat concerned about the matter because in the operation of the business she would have to borrow money and her ability to do so would be dependent upon the financial condition of the business. Mr. Greene said, ''Don't worry about that at all, and I hope you get the business, that I will never under any circumstances take any steps to collect this money from you or anything that you might get.'' Mr. Greene also said in one conversation that he would be very happy if Gordon Wilson had to pay some small amount monthly so that every month he would be reminded that he ''hadn't gotten away with it.'' In conversation Mr. Greene also made comments as to his resentment with respect to the way in which Gordon Wilson had treated him and his mother in their earlier financial dealings. Mr. Gilbert further testified that in one of the conversations Mrs. Wilson said that if any claim was going to be asserted against her, she wanted to get in touch with her attorneys regarding it because they were having their final hearing on the matter in court, and that if this would affect her or any property she might get, she would want to see her lawyers concerning the matter of raising this subject so that it might be considered in the determination of the Wilsons' respective rights in the divorce action. Mr. Gilbert participated in the matter of the loans to Mrs. Wilson and, in doing so, relied on Mr. Greene's statements; he would not have so participated if those statements had not been made.

Mr. Henzie, one of Mrs. Wilson's attorneys in the divorce action, testified that in the hearing with respect to the divi-

sion of property in October 1956, he and his associate, Mr. Belcher, took no steps to protect Mrs. Wilson with respect to any claims of Mr. Greene. At his home on one occasion, which he believed to have been on Sunday, December 9, 1956, he participated in a conversation. He testified as follows: ''The substance of that conversation was that Mr. Greene stated that Gordon Wilson had misled him and had imposed upon him and that he, therefore, considered that Gordon Wilson owed him the money that he had advanced, that Mrs. Wilson had not taken part in any of the negotiations or the loans that had been involved so far as his claim against Mr. Wilson was concerned; and, therefore, that he did not consider that she owed him any money or that she should have to pay any of the amounts involved. He said, in substance, that he didn't care how long it took him to collect from Mr. Wilson or what amount, how big or small the payments were, that the only thing he was interested in was seeing that Gordon Wilson alone paid the amounts that he had advanced. He said that—he told me that—he stated in the presence of the people who were there that he had assured Mrs. Wilson that under no circumstances would he ever attempt to collect any of that money either from her or from any property that she might be awarded in the divorce case. And about this time in the conversation we discussed the possibility of Mrs. Wilson getting the businesses and the home and so on. And Mr. Greene stated that he certainly did hope that she was successful in that regard. And at that time I told Mr. Greene that it was very important to us and to Mrs. Wilson for us to know exactly what his position was in that regard because if he was ever going to attempt to collect from her and to recover out of a property that was awarded to her in the divorce case that she should know that in order that we could take steps to have that properly considered in the divorce hearing that we were going to have in the next few days. And he told—he again said that under no circumstances was he going to attempt to collect from her or from any property that was awarded to her in the divorce court. That was the substance of the conversation.'' In that conversation it was mentioned that in the divorce proceeding counsel were going back into court on the following Tuesday, December 11, 1956.

With respect to his reliance upon Mr. Greene's statements, Mr. Henzie testified as follows: ''Well, in reliance upon Mr. Greene's assurance that he would not make any effort to collect any of the monies that would ultimately—recover against Gor-

don Wilson, we made no effort in the final hearing before Judge Herndon to get a specific order that Gordon Wilson assume and pay that obligation, and we made no provision for it in the final judgment that was prepared in my office.'' He further testified that the obligations to Mr. Greene had never been set up on the books and records of Tri-Color Laboratories. Mr. Henzie participated in the guarantee of the $50,000 loan; in so doing he relied upon Mr. Greene's statements and would not have so participated if Mr. Greene had not given such assurances that he would not look to Mrs. Wilson or the business for the payment of the debt.

Mr. Henzie testified that on Tuesday, December 11, 1956, Mrs. Wilson and her attorneys went into the superior court and there was a conference in which the judge and the attorneys for the Wilsons participated. The conference related to the division of the community property. The judge stated that he had determined that the house and the furnishings therein were worth $21,000, that there was an encumbrance against the real property of approximately $4,000, and that, accordingly, the net value was $17,000. He further stated that, based on the appraisal of the expert witness who had testified on behalf of Mr. Wilson, he would find that the value of the business was $35,000. The total value of such assets was $52,000. The judge then stated that he was going to award the business and the house and furnishings therein to Mrs. Wilson and that he would impress the business with a lien of $25,000 in favor of Mr. Wilson. Other matters were also discussed. Mrs. Wilson's attorneys prepared the form of the final judgment of divorce. The judgment was entered on that day, December 11, 1956.

The agreement between Mr. Greene and Gordon Wilson with respect to their litigation as to the money owed to Mr. Greene bore the date of December 10, 1956. Therein Mr. Wilson agreed to pay to Mr. Greene the sum of $7,500 without interest, payable at the rate of $150 per month commencing on December 15, 1956, and continuing for a period of 50 months; it was agreed that, in the event of any default in payment, Mr. Greene could enter judgment against Mr. Wilson in the pending action for the total amount of $20,535.65, less any amounts theretofore paid. There was a provision for a period of grace with respect to the matter of remedying any default. It was further provided that after $7,500 had been paid, Mr. Wilson's promissory note for $3,500, payable without interest in installments of $150 per month, would be accepted in full

release and satisfaction of all claims of Mr. Greene in connection with the pending litigation or otherwise. Pursuant to that agreement Mr. Wilson made payments in the total amount of $3,900 but failed to make the payment due on February 15, 1959. On June 19, 1959, judgment was rendered against Mr. Wilson for $16,635.65.

It is true that Mrs. Wilson's position was that Mr. Wilson's lien for $25,000 against the assets of the business had been satisfied because of Mr. Wilson's use of funds of the business in violation of certain provisions of the interlocutory and final judgments of divorce. Consequently, the imposition of the lien in the final judgment may have been of little practical importance. But it was a reasonable inference that if Mr. Greene's statements that he would not look to Doris Wilson or any property which she might receive in the divorce action for the satisfaction of any obligation owed to him had not been made and reliance had not been placed thereon by Mrs. Wilson and her attorneys, some protection for her with respect to the claims of Mr. Greene would have been asked of the trial court in the divorce proceedings and that such relief would probably have been granted. There could reasonably have been included in the final judgment of divorce a provision to the effect that Mr. Wilson was required to pay all obligations owing to Mr. Greene and to hold Mrs. Wilson harmless from claims based thereon. (See *Carew* v. *Carew*, 175 Cal.App. 2d 706 [346 P.2d 845].) Furthermore, had Mr. Greene's statements not been made and relied upon, the agreement between Mr. Greene and Mr. Wilson, made on the day before the conference of the court and counsel with respect to the division of community property in the divorce action, could have been brought to the attention of the court with a request that Mr. Wilson be ordered to comply with that agreement and, upon his failure to make a payment when due, to give prompt notice of that fact to Mrs. Wilson so that she might protect her interests by curing any default within the grace period and thereupon acquire a right to have reimbursement from Mr. Wilson. Such an order would have enabled Mrs. Wilson to avoid a claim of the nature asserted in the present litigation. Moreover, the evidence clearly supported the inference that Mrs. Wilson undertook to salvage the business of Tri-Color Laboratories and, in so doing, assumed substantial obligations in reliance upon the statements and representations of Mr. Greene. Such statements and representations were sufficient to constitute promises within the doctrine of promissory estop-

pel. (See *Drennan* v. *Star Paving Co., supra,* 51 Cal.2d 409, 413.) Since the evidence presented a question of fact for the trial court as to the existence of an estoppel of the nature asserted by Mrs. Wilson, and since there was substantial evidence in support of the findings of fact of the trial court with respect to that matter, an appellate court cannot interfere with the challenged findings. (*Henry* v. *Weinman, supra,* 157 Cal.App.2d 360, 366.)

Several other matters remain for consideration. At the conclusion of his testimony on Thursday, February 9, 1961, Mr. Wilson, who then lived in San Francisco, was excused from further attendance at the trial upon the request of his attorney, Mr. Hildreth. Mr. Hildreth was also excused from thereafter being present at the trial; he indicated, however, that he might want to participate in the arguments at the conclusion of the case. On the last day of the trial, Wednesday, February 15, 1961, counsel for Mr. Greene stated that he had intended to call Mr. Hildreth as a witness and that Mr. Hildreth had said in his presence and that of Mrs. Wilson's attorney that he would return upon being requested to do so and that the use of a subpoena would not be necessary. But when Mr. Greene's attorney called Mr. Hildreth's office, he was informed that Mr. Hildreth would be away until Thursday night. A motion for a continuance so that Mr. Hildreth's testimony might be obtained was denied. A statement with respect thereto was made which was in substance as follows: Mr. Hildreth would testify that he was present at the conference in chambers of counsel and the judge in the divorce proceedings on December 11, 1956, pursuant to a telephonic notification that the judge wanted to state orally his proposed determination with respect to the final judgment; that he informed the court that on the previous day a settlement had been made of the litigation between Mr. Greene and Gordon Wilson; that nothing was said by Mrs. Wilson's attorneys to the effect that they or their client considered that she had a release with respect to the Greene claims; that Mr. Hildreth had no knowledge of any such claim of a release, but if such matter had been brought before the court, Mr. Hildreth "would have taken steps for further relief"; and that the agreement between Mr. Greene and Mr. Wilson was executed in his office on December 10. ▇▇▇ If it be assumed that the showing made by Mr. Greene's attorney with respect to his diligence in attempting to produce Mr. Hildreth as a witness was such that it was an abuse of discretion to deny the motion

for a continuance, still no miscarriage of justice is evident because it does not appear reasonably probable that a result more favorable to the plaintiff Greene would have been reached had Mr. Hildreth testified in accordance with the statement made by the plaintiff's attorney. (See *Crosby* v. *Martinez*, 159 Cal.App.2d 534, 542 [324 P.2d 26].)

During the course of the trial and before he was excused from further attendance, the attorney for Gordon Wilson offered in evidence (by reference) the file of the superior court in the action brought by Mr. Greene against Mr. Wilson. An objection was made on behalf of the defendant Doris Wilson. It was then stated by counsel for Gordon Wilson that the purpose of the offer was to furnish proof as to the judgment in that action. The plaintiff's counsel also desired to have the judgment in evidence. Mrs. Wilson's attorney thereafter stated in part: ''The reason we don't want this in is because after the judgment . . . there are voluminous affidavits, . . . these can have no benefit to the Court in proving existing judgment. . . .'' After further discussion the trial judge asked, ''How about the whole file?'' Counsel for the plaintiff started to answer the enquiry, whereupon the attorney for Mrs. Wilson stated, ''I will withdraw my objection, let it go in evidence.'' The file was received as an exhibit. On the following day, the plaintiff's attorney stated, with respect to the exhibit, ''Of course, we are not putting in pages and pages having to do with affidavits.'' Counsel for Mrs. Wilson replied that all of the file went into evidence and that it was ''very important'' inasmuch as there was ''something'' he wanted to use. The court ruled that all of the contents of the file had been received in evidence and refused to strike from evidence any portion of the file in the absence of Mr. Hildreth, counsel for Gordon Wilson, who had offered the file in evidence.

In the presentation of Mrs. Wilson's case, her attorney read to the court certain affidavits contained in the court file to which reference has just been made. The plaintiff Greene's objections that they constituted inadmissible hearsay were overruled. One affidavit was that of Mr. Greene's mother and the other was the affidavit of David and Patricia Van Every. Such affidavits related to admissions made by the plaintiff Greene that he intended to proceed against Mr. Wilson only and did not intend to proceed against Mrs. Wilson or her property. In each instance, Mr. Greene was asked if he made the statements on the subject contained in the affidavits and he stated that he did not recall making those set forth in his

mother's affidavit and that he had not made those embodied in the other affidavit. Mrs. Greene, the plaintiff's mother, was called as a witness on behalf of her son and testified as to the circumstances under which her affidavit was obtained. In substance, she denied that the affidavit correctly related statements of her son.

Material evidence which is subject to the objection that it is hearsay but which is admitted without such an objection may be considered by the trier of fact. (*Powers* v. *Board of Public Works*, 216 Cal. 546, 552 [15 P.2d 156]; *Crocker-Anglo Nat. Bank* v. *American Trust Co.*, 170 Cal. App.2d 289, 299 [338 P.2d 617].) As has been noted, after Mrs. Wilson's attorney had withdrawn his objection, the complete file of the superior court in Mr. Greene's action against Gordon Wilson, which included the affidavits, was received in evidence. But even if it would have been more consonant with fairness to have granted the plaintiff's motion to strike from evidence all portions of the file except that part relating directly to the judgment itself, no error giving rise to a miscarriage of justice is evident. The evidence produced through use of the affidavits was purely cumulative in nature inasmuch as the defendant Doris Wilson, Mr. Gilbert and Mr. Henzie had testified at length as to the statements of Mr. Greene and it does not appear reasonably probable that a disposition of the case more favorable to the plaintiff would have resulted if such affidavits had been excluded. (See *Nesbitt Fruit Products, Inc.* v. *Del Monte Beverage Co.*, 177 Cal.App.2d 353, 364 [2 Cal.Rptr. 333]; *Milton* v. *Hudson Sales Corp.*, 152 Cal.App.2d 418, 439 [313 P.2d 936].)

In view of what has been said, it is unnecessary to discuss at length the plaintiff's assertion that the admission of the Van Every affidavit "was particularly damaging since the Van Everys were not available for cross-examination and the court refused to grant a continuance in order that . . . they . . . could testify." However, insofar as the matter of the denial of a continuance is concerned, it is to be noted that the trial court's refusal to limit the extent to which the contents of the file were to be considered as being in evidence occurred in the morning session of Friday, February 10, 1961. On Tuesday, February 14, 1961, the plaintiff Greene testified in rebuttal. He said that until that day he had been staying with his friends, the Van Everys, and that when he came to Los Angeles for the trial he had looked at a copy of their affidavit and had discussed with Mr. Van Every "last night

and the night before'' the circumstances under which he had signed the affidavit. He was not permitted to relate the conversation and his counsel requested a continuance, stating, ''We telephoned the Van Everys at the 3:00 o'clock recess, and they have been [*sic*] gone out of town for several days and will not be back until Saturday. . . .'' ██ Since the plaintiff's counsel was charged with knowledge that the affidavit was part of the file which was in evidence, the denial of a continuance cannot be said to have been an abuse of discretion in the light of the lack of diligence on the plaintiff's part in arranging for the presence of Mr. and Mrs. Van Every. (See *Espinola* v. *Provenzano*, 156 Cal.App.2d 760, 762 [320 P.2d 149].) But, in any event, because the evidence obtained by use of the Van Every affidavit was of a cumulative nature, no prejudicial error occurred. (See *Nesbitt Fruit Products, Inc.* v. *Del Monte Beverage Co., supra*, 177 Cal.App.2d 353, 364.)

Since the findings of fact of the trial court relating to the matter of promissory estoppel have substantial support in the evidence and sustain the judgment, it is not necessary to discuss the plaintiff's attack on findings relating to other matters upon which the defendant Doris Wilson also based her defense. (See *Bolen* v. *Parks*, 149 Cal.App.2d 460, 468-469 [308 P.2d 521].) Other claims of error asserted to have occurred during the course of the trial need not be considered since their nature is such that they do not affect the determination herein set forth.

The judgment is affirmed.

Shinn, P. J., and Files, J., concurred.

A petition for a rehearing was denied November 9, 1962, and appellant's petition for a hearing by the Supreme Court was denied December 19, 1962.