N. LITTERIO & COMPANY, Inc.,
Appellant,

v.

GLASSMAN CONSTRUCTION COM-
PANY, Inc., Appellee.

No. 17228.

United States Court of Appeals
District of Columbia Circuit.

Argued April 10, 1963.

Decided May 23, 1963.

Mr. Samuel Barker, Washington, D. C., for appellant. Mr. Joel Savits, Washington, D. C., also entered an appearance for appellant.

Mr. Leonard S. Melrod, Washington, D. C., with whom Messrs. Joseph V. Gartlan, Jr., and E. David Harrison, Washington, D. C., were on the brief, for appellee.

Before FAHY, DANAHER and WRIGHT, Circuit Judges.

FAHY, Circuit Judge.

Appellant, N. Litterio & Company, Inc., defendant in the District Court, was sued there by Glassman Construction Company, Inc., appellee, for $17,706, the difference between the amount of a bid by Litterio to Glassman to do certain brick and masonry work and the bid by another company which actually did the work when Glassman was awarded the prime contract to construct a school building.[1] Glassman's bid for the prime contract, which it performed, was $1,539,000. Motion of Glassman for summary judgment for $17,706 was granted, and Litterio's motion for summary judgment was denied. These motions were decided on the pleadings, depositions and statements filed under the rules applicable to summary judgment proceedings. On the basis of the data thus before the District Court we pass upon the appeal by Litterio.

The Litterio bid was prepared by Mr. Hammer, an estimator in the employ of Litterio, and communicated orally by Hammer to Glassman on the latter's oral request. Upon receiving the bid Glassman advised Hammer it seemed low and asked that it be rechecked. This was done by Hammer and confirmed by telephone. Glassman's evidence tends to show that it then advised Hammer that since the bid he submitted was lowest it was being used by Glassman in its bid for the prime contract, and if Glassman received that contract Litterio would be given the subcontract for the brick and masonry work. When the prime contract was awarded to it Glassman sent Litterio a written proposed subcontract for the brick and masonry work to be done for the amount of Litterio's bid. The proposal contained various terms which, so far as the record shows, had not theretofore been the basis of any communication between the parties, including a provision that it was not valid unless signed and returned within ten days. The President of Litterio in the meantime had returned to the City, from which he had been absent when Hammer submitted the bid. The President concluded the bid was based on mistaken calculations and was too low. Litterio did not sign and return the proposed subcontract. Arrangements were then made by Glassman with the next lowest bidder among those newly solicited for the brick and masonry work.

Litterio challenges the judgment on several grounds, including the following:

1. In making the bid Hammer acted beyond the scope of his employment;

2. There was no proof of the figure used by Glassman for the brick and masonry work in making its bid for the prime contract, no proof, in other words, that Glassman was damaged;

3. No obligation contractual or otherwise on Litterio's part arose. In this respect appellant argues that there is no local custom to rely simply on oral bids without negotiation of other terms as well. Furthermore appellant contends that appellee was not entitled to rely—if in fact it did—on a bid which was so obviously out of line.

In support of the judgment Glassman relies primarily upon the doctrine of promissory estoppel. It says that when Litterio was advised that its bid was low, was being used by Glassman

---

1. Litterio bid $167,500 and the subcontractor who did the brick and masonry work bid $185,206

in bidding for the prime contract, and that Litterio would be given the subcontract should Glassman obtain the prime contract, Litterio was estopped to deny the binding effect of the promise represented by its bid.

The authorities are not uniform in applying the doctrine of promissory estoppel in circumstances comparable to those before us, nor do they always keep clear the distinction between traditional rules of contract law and the principles of promissory estoppel. Appellee cites Drennan v. Star Paving Co., 51 Cal.2d 409, 333 P.2d 757 (1958), and Northwestern Engineering Co. v. Ellerman, 69 S.D. 397, 10 N.W.2d 879 (1943). In Drennan the subcontractor was held liable for the amount by which its bid was lower than the amount the general contractor had to pay as a consequence of this subcontractor's refusal to do the work. The terms of the subcontract were either before the subcontractor when he made his bid or there was no dispute as to what terms would be implied. The general contractor had listed the subcontractor's name in bidding for the prime contract. And the approach taken by the California court reveals that detrimental reliance may become the equivalent of consideration for an implied promise to keep a bid open for a reasonable time when, in the first place, a bid is properly classifiable as an offer or "promise to perform." 333 P.2d at 759. In Ellerman, while the court applied the doctrine, the terms of the contract were set forth in such detail at the time of the bid that the court concluded the parties intended to be bound by those terms. The subsequent written contract which the parties contemplated was considered a mere formality.

Litterio on its part relies upon Hedden v. Lupinsky, 405 Pa. 609, 176 A.2d 406 (1962); Baird Co. v. Gimbel Bros., 64 F. 2d 344 (2d Cir. 1933), opinion by Judge Learned Hand; Milone & Tucci, Inc. v. Bona Fide Builders, 49 Wash.2d 363, 301 P.2d 759 (Wash.1956), and Robert Gordon v. Ingersoll-Rand Co., 117 F.2d 654 (7th Cir. 1941). In Hedden the bid of the subcontractor was used by the contractor who obtained the prime contract, as Glassman says it did in our case, but the subcontract offered differed in several particulars from "the General Conditions and General Requirements" contained in the specifications. Pointing this out, and noting the absence of any evidence of what the local trade custom was with respect to oral bids, the court held the subcontractor not bound by its bid, saying:

> "[T]he foregoing variances constitute a counter-offer. This court has long adhered to the position of 1 Restatement, Contracts, § 60 (1932), that 'a reply to an offer, though purporting to accept it, which adds qualifications or requires performance of conditions, is not an acceptance but is a counter-offer.' * * * Assuming, as we must, that Lupinsky phoned a proposal to plaintiffs, his bid constituted an offer to perform the job for a specified amount in accordance with the specific provisions of the General Conditions and Requirements contained in the specifications. When plaintiffs sent the sub-contract to defendant with terms in variance with those in the specifications, they were actually submitting a counter-offer for his acceptance. Lupinsky chose not to accept and, consequently, no contract resulted."

176 A.2d at 408. It should also be noted that in Hedden there appears to have been no follow-up telephone call from the prime contractor to the subcontractor after the bid was submitted.

The principal support Baird gives to Litterio is that the court thought the doctrine of promissory estoppel inapplicable where the offer or bid was withdrawn before acceptance, though it had been relied upon by the offeree. While this seems a rather restrictive view of the estoppel doctrine, the case is instructive on the claim here of a bilateral contractual obligation. As to that we think the contract offered to Litterio by Glassman, assuming Glassman's use of

Litterio's bid in obtaining the prime contract, was not an acceptance but a counter-offer. And, as in Baird, the mere use of the bid was not an acceptance in law which gave rise to a contract with Litterio. The Milone case is to the same effect. See also R. J. Daum Constr. Co. v. Child, 122 Utah 194, 247 P.2d 817 (Utah 1952).

■ In light of the authorities discussed above we think no contractual obligation on Litterio's part arose, but this does not dispose of the separate question of promissory estoppel. We think the promissory estoppel doctrine,[2] while it extends to commercial transactions, does not entitle appellee to summary judgment on the data which was before the District Court.

■ To hold a defendant liable under this doctrine there must be a promise which reasonably leads the promisee to rely on it to his detriment, with injustice otherwise not being avoidable. Restatement, Contracts § 90 (1932). If the bid can be regarded as constituting only an estimate,[3] or for any other reason is not a promise affirmatively to do something, then the plaintiff cannot recover. Likewise if there is no reasonably foreseeable likelihood of reliance by the person receiving the offer or promise,

the doctrine does not permit recovery. And the reliance must be "justifiable." See Robert Gordon v. Ingersoll-Rand Co., supra, 117 F.2d at 661. Finally, there must be some substantial detriment due to the reliance.[4]

In our case Glassman, as we have said, upon obtaining the prime contract submitted to Litterio for its signature a detailed proposed contract which had not been before Hammer when he submitted the bid.[5] Having become convinced that its bid was too low, Litterio let the ten days elapse without executing and returning the proposed subcontract. In the proceedings in the District Court the President of Litterio deposed, and the District Court found, that Litterio would have accepted the contract except for the error in estimating the cost of the work.[6] The refusal to go ahead, in other words, was based on the price, not on other provisions in the proposed contract, though it is not shown that Litterio communicated to Glassman his assent to these other provisions.[7] However, it does not appear that Glassman expected Litterio to proceed except under the terms of the counter-offer; for example, no demand to discuss other terms was made.

■■ In the circumstances above described Glassman's case as presented on

---

2. The doctrine is stated in the Restatement, Contracts § 90 (1932), as: "A promise which the promisor should reasonably expect to induce action or forbearance of a definite and substantial character on the part of the promisee and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise."

Leading treatises agree that the principle is applicable not merely to charitable subscription cases and the like where it apparently had its beginning but also to commercial dealings as well. See 1 Corbin on Contracts §§ 193–209 (1950); 1 Williston on Contracts § 140 (3d ed. Jaeger 1957).

3. Cf. Leo F. Piazza Paving Co. v. Bebek & Brkich, 141 A.C.A. 265, 296 P.2d 368 (Calif.Dist.Ct.App.1956).

4. See generally Boyer, "Promissory Estoppel: Requirements and Limitations of

the Doctrine," 98 U.Pa.L.Rev. 459 (1950).

5. Among the terms contained in the proposed written agreement was a provision for retention by the contractor of any sums due the subcontractor for noncompliance as determined solely by the contractor, a provision for liquidated damages of $25 per day for late completion after fifteen months, and a provision for the contractor to pay progress payments jointly to the subcontractor and the latter's suppliers—at the contractor's option.

6. Litterio's President deposed that he had not looked for the "plans" because he knew the job was not right, "something was wrong with the job, and I didn't ask for the plans." He said the work could not be done for the price Hammer had bid.

7. See note 5, supra.

the motion for summary judgment lacked facts from which the court could find that Glassman by reason of local custom in the trade was justified in relying on Litterio's bid communicated by telephone and without reference to other, albeit less significant, terms. Compare Hedden v. Lupinsky, supra, 176 A.2d at 407 and 408, with Robert Gordon, Inc. v. Ingersoll-Rand Co., supra, 117 F.2d at 658. We cannot, in other words, as a matter of law conclude (1) that Litterio's bid constituted a promise within the meaning of the doctrine,[8] or (2) that Glassman reasonably or justifiably relied upon the promise if there was one.

In the above situation summary judgment was not available to Glassman on the ground of promissory estoppel; and, as we have said, no bilateral contractual basis for the judgment existed. Since, however, Litterio's own motion for summary judgment was not advanced on the basis of Glassman's failure to prove justifiable reliance upon the Litterio bid, but rather on the theory that no agreement existed, it would not be appropriate for this court to direct the entry of summary judgment for Litterio. We shall reverse and remand so that the case may go to trial, having in mind that ordinarily an estoppel is a question of fact. Henry v. Weinman, 157 Cal.App.2d 360, 321 P.2d 117 (Calif.Dist.Ct.App. 1958). And see Hardison v. Shirlington Trust Co., 148 A.2d 88 (D.C.Mun.Ct.App. 1958).

The remand will also provide Litterio with the opportunity at trial to establish its claim of lack of authority in Hammer to have made the bid on Litterio's part, and, also, the absence of damage to Glassman should it appear either that Glassman did not use the Litterio figure in its own bid for the prime contract or that Glassman suffered no real loss when it obtained another subcontractor to do the brick and masonry work.[9] These issues of agency and damages were disputed issues of material fact when the case was before the District Court on the motions for summary judgment. See Fed. R.Civ.P. 56(c).

Reversed and remanded for further proceedings consistent with this opinion.

---

8. Cf. Drennan v. Star Paving Co., supra.

9. The issue as to the applicability of the Statute of Frauds is no longer germane in light of our holding that no contract was created.