**GRAHAM, VAN LEER & ELMORE CO., INC., Plaintiff,**

**v.**

**JONES & WOOD, INC., Defendant.**

Civ. A. No. 85–3984.

United States District Court,
District of Columbia.

April 1, 1987.

Patricia V. Fettmann, Alexandria, Va., for plaintiff.

Leonard A. White, Chevy Chase, Md., for defendant.

## DECISION AND ORDER

JACKSON, District Judge.

Plaintiff Graham, Van Leer & Elmore Co., Inc. ("Graham, Van Leer"), a Virginia seller/installer of architectural building products, brings this contract action against defendant Jones & Wood, Inc. ("Jones & Wood"), a District of Columbia mechanical contractor, for the purchase price of six "modified Duralab fume hoods" at a cost of $3,800 each, or a total of $22,800.00, under a written agreement. In its answer and counterclaim Jones & Wood alleges that several months earlier Graham, Van Leer had given it an oral quote over the telephone to supply the hoods for

$1,000 each, in reliance upon which it prepared and submitted its formal bid to its client, and that Graham, Van Leer is therefore either contractually bound to that figure or estopped from demanding the higher price. The written purchase order, Jones & Wood explains, was submitted under "economic duress"—Graham, Van Leer being the exclusive distributor of the hoods in the Washington, D.C. area—and is thus voidable at its election. Upon the following facts, as found by the Court in accordance with Fed.R.Civ.P. 52(a) upon trial without a jury, for the reasons stated, the Court will enter judgment for the plaintiff as prayed.

## I.

In the fall of 1983, Jones & Wood was preparing a formal bid for a construction project at a Howard University laboratory building calling for modification of an existing hood ventilation and exhaust system. In early December, 1983, John ("Jack") Sis, the Jones & Wood estimator preparing its bid, telephoned Rush H. Elmore, Jr., an employee of Graham, Van Leer, to obtain a price quotation for the fume hoods. There had been no prior contact between the firms with respect to the project, and Elmore, Jr., was unprepared to give an answer. He explained to Sis that he was not qualified to give telephone quotes for Duralab products. He then checked the "bid board," where the company posted completed workups and quotations, found no listing for the Howard University project and no other proposals to furnish the fume hoods, and told Sis that he could give him no figure at that time. Elmore, Jr., later related the inquiry to his father, Rush Elmore, Sr., the company president, who was in the hospital recovering from surgery, and obtained a figure from him which Elmore, Jr., passed on to Sis as a "guesstimate" when he called back several days later. Sis testified, without contradiction by Elmore, Jr. (who doesn't remember the figure he mentioned), that he had been given a "price-not-to-exceed" quote of $1,000 per hood. Jones & Wood submitted its bid to Howard University the same day, allowing in its calculations a sum of $6,000 for six fume hoods.

When it was awarded the Howard University contract, in the amount of about $103,000, in mid-April, 1984, Jones & Wood again contacted Graham, Van Leer regarding the hoods and learned from Elmore, Sr., that it could expect to pay considerably more than $1,000 per hood. In the ensuing weeks, Jones & Wood complained that it had "relied" on the earlier figure and that Graham, Van Leer had not lived up to its "quotation" of December, 1983, but negotiations between them continued, and on August 30, 1984, Graham, Van Leer demanded a firm price of $3,800.00, for each fume hood (being its own cost to obtain them from the Duralab factory), which Jones & Wood, albeit reluctantly, agreed to pay by its written purchase order for six of them at a total price of $22,800, under date of September 4, 1984.

Graham, Van Leer delivered the hoods to the site in April, 1985, where they were installed, and, having paid Duralab for them, billed Jones & Wood for $22,800. To date, Jones & Wood has made no payments to Graham, Van Leer in any amount.

## II.

The Court concludes that defendant's purchase order of September, 1984, constitutes a valid and enforceable contract in writing for the sale of goods, governed by Article II of the Uniform Commercial Code pursuant to which it represents the totality of the agreement between the parties, and its terms cannot be contradicted or varied by parol evidence. D.C.Code Ann. § 28:2–202 (1981).[1] By its purchase order defendant agreed to buy six fume hoods from plaintiff for a total price of $22,800.00. Plaintiff made (for purposes of this case) a timely delivery of conforming

---

1. The purchase order itself, moreover (on a Jones & Wood form), contains an integration clause providing that "[a]ll prior representations, conversations or preliminary negotiations shall be deemed to be merged into this order. This purchase order, when accepted by the seller, shall constitute the entire agreement between the purchaser and the seller." Purchase Order, para. 8. (Plaintiff's Exhibit 1).

goods to the worksite, and defendant is in breach of the contract by its failure to pay for them.

■ By way of defense, defendant claims that it submitted the purchase order under "economic duress," and that the contract is therefore voidable. The economic duress, according to defendant, is to be found in the fact that Graham, Van Leer was the sole local source for Duralab hoods,[2] making it fearful of repercussions, i.e., damages for defective performance or delay, under its own contract with Howard University had it sought to find a cheaper substitute which might not have been acceptable to Howard.

The circumstances, however, do not constitute the "economic duress" which is sufficient to relieve a party to a contract of his otherwise voluntary undertaking. *See generally* 13 Williston on Contracts §§ 1603, 1617 (3d ed. 1970). The compulsion to enter into a contract which may later be lawfully avoided must be the result of the other party's *illegal* coercive conduct, not merely the stress of market conditions or the victim's financial exigencies. *Id.; e.g., Business Incentives Co. Inc. v. Sony Corp. of America,* 397 F.Supp. 63, 69 (S.D. N.Y.1975). Exclusive distributorships are a fact of market life; if they do not offend the antitrust laws, they are simply a circumstance to be taken into account by prospective buyers of a commodity who must realize that their economic choices are limited and plan accordingly. And virtually all construction contracts contain performance specifications and call for completion within a time certain. A general contractor who is forced into a harsh bargain with a subcontractor or supplier to meet his obligation to his client is no less bound to that bargain merely because business necessity dictates that he accept the unfavorable terms, unless the subcontractor/supplier has no right to demand such terms in the first place. *See Chouinard v. Chouinard,* 568 F.2d 430, 433–34 (5th Cir.1978).

■ As evidence of Graham, Van Leer's loss of right to insist upon a higher price for the fume hoods, in its counterclaim defendant asserts that the December, 1983, telephone conversations between Sis and Elmore, Jr., formed an oral contract by which Graham, Van Leer agreed to supply Jones & Wood with Duralab hoods at not more than $1,000 apiece. By either's account of the conversations, however, there was neither an offer, nor an acceptance of an offer, to buy or sell. Sis requested a price "quote" for fume hoods and was given one. He did not purport to obligate his employer, Jones & Wood, to buy any number of them from Graham, Van Leer at any price at any time; conversely, he neither asked for nor was given a commitment by Elmore, Jr., to sell them to him. Thus, whether or not Jones & Wood might be entitled to show an oral agreement at variance with the terms of the written September, 1984, purchase order, the evidence presented simply does not establish any such agreement.

■ Jones & Wood's principal alternative theory upon which it seeks to hold Graham, Van Leer to a $1,000–per–hood price—promissory estoppel—fails for the same reason: irrespective of any justification for its reliance upon the erroneous quotation, Elmore, Jr., made no promise, express or implied, to sell Duralab hoods to Jones & Wood over the telephone. *See N. Litterio & Co. v. Glassman Constr. Co.,* 319 F.2d 736, 739 (D.C.Cir.1963).

■ In support of its remaining alternative theories—estoppel *in pais* and negligent misrepresentation—Jones & Wood adduced considerable evidence of "industry custom and practice." It appears that general contractors customarily wait until the final hours preceding the deadline for bid submission before preparing bids, and then usually do so on the basis of telephone inquiries of potential subcontractors and suppliers whose figures are then "shopped" among prospective competitors. Assuming Elmore, Jr., was aware of the custom, and that, on behalf of Graham, Van Leer, he must therefore be presumed

---

**2.** Graham, Van Leer, as Jones & Wood at all times knew, has been the exclusive distributor of Duralab products in the Washington area since 1968.

to have responded to Sis' query in the light of it, the custom still does not support defendant's theories. A contractor who relies upon a verbal price quotation, which he may then "shop" on the market for a better one, without obtaining a binding commitment from the source of the quotation to adhere to it for the necessary time (by, for example, an option), is not justified in doing so; he relies at his peril.[3] By similar reasoning, a contractor who acts upon a price quotation from one who is not bound to honor it cannot complain even if he is negligently misinformed; he is himself contributorily negligent.

For the foregoing reasons, therefore, it is, this 1st day of April, 1987,

ORDERED, that judgment be entered on the complaint for plaintiff Graham, Van Leer & Elmore Co., Inc., against defendant Jones & Wood, Inc. for $22,800.00, together with interest at six (6) percent per annum from June 4, 1985, in accordance with D.C. Code Ann. §§ 15–108, 28–3302 (1981);[4] interest in accordance with 28 U.S.C. § 1961 (1982) from the date hereof; and costs; and it is

FURTHER ORDERED, that defendant's counterclaim is dismissed with prejudice.[5]

---

3. There is evidence that, by industry custom, a quotation which both parties understand to be a "firm bid" justifies reliance notwithstanding it is unsupported by consideration. The Court finds that Elmore, Jr.'s quotation/"guesstimate" was not the "firm bid" contemplated by industry custom.

4. Pre-judgment interest is awarded as of the 30th day following the date of plaintiff's invoice, i.e., May 5, 1985.

5. Plaintiff's claim for attorneys' fees is denied. Paragraph 7 of the Purchase Order imposes an obligation upon the *seller* for the *purchaser's* attorneys' fees in the event of the former's default, but not *vice versa,* and, in the absence of an agreement to the contrary, the American rule with respect to attorneys' fees applies.