JAMES L. FLUCKEY, EXECUTOR, APPELLEE, V. BERTHA LEOLA ANDERSON, APPELLANT.

273 N. W. 41

FILED APRIL 30, 1937.   NO. 29897.

*J. J. Harrington,* for appellant.

*Julius D. Cronin* and *W. J. Hammond, contra.*

Heard before GOSS, C. J., ROSE, GOOD, EBERLY, DAY and PAINE, JJ., and MESSMORE, District Judge.

EBERLY, J.

This is an action at law brought by James L. Fluckey, as executor of the last will and testament of Austin L. Fluckey, upon a promissory note, in usual form, signed by Bertha

Leola Anderson. The answer of the defendant admitted the appointment and qualification of the executor, and the execution and delivery of the note in suit, and then pleaded at length facts establishing that the instrument in suit was wholly without sufficient consideration. The new matter set forth in defendant's pleading was denied generally by plaintiff's reply. The pleadings, of course, imposed the burden of proof upon the defendant. *Plaza Hotel Co. v. Hotel Stratton, ante,* p. 396, 272 N. W. 224.

The trial court submitted the issues to the jury, solely on the question of consideration, and the verdict returned was for the plaintiff as prayed. From the order of the trial court overruling her motion for a new trial, defendant appeals.

The verdict of the jury necessarily determined certain questions of conflicting evidence in favor of plaintiff. On this basis, it may be said that Austin L. Fluckey was the father of three daughters and two sons; that he advanced and loaned various sums to these children and to their respective spouses; that as early as 1915 he loaned a certain sum to George Anderson, who was the husband of his daughter, Bertha Leola Anderson, *nee* Fluckey; that the notes evidencing this loan were renewed from time to time, the original and each renewal note being executed by George Anderson and his wife, Bertha Leola Anderson, the latter signing as surety, but she then possessed no sole or separate estate; that George Anderson died in 1924 leaving an insolvent estate; that his wife, at the demand of her father, substituted her own promissory note for that executed by her husband and herself, and which she thereafter renewed. In June, 1929, the father, who was ill, had a family conference, at which were his three daughters, including Bertha Leola Anderson, and two sons. So far as pertaining to the present litigation, Mr. Fluckey then said to his children there assembled: "I want you that owe me notes to keep them up to date, and those that are past due to renew them now while you are here; and he says to my sister Mrs. Kellar, yours is past due, and he spoke to Bertha

Anderson and told her that hers was past due. Mrs. Hopkins renewed her note that day. Then he asked Bertha (Anderson) to renew her note, and she objected to renewing it because she felt he was showing partiality to Art (a brother) on this insurance policy." He, the father, then said: "I want you to understand this, if you are unable to pay these notes while I live they must be taken out of your share of my estate before distribution or division is made. * * * If any of you don't keep your notes from outlawing, and permit them to outlaw, I will fix it so that that will be all of my estate that you will receive." Later the father sent his son, James L. Fluckey, over to the home of Mrs. Bertha Anderson, and it was again made plain to her, by her father's message then delivered by the son, "that if she allows it to outlaw that that will be all of my estate she will ever receive." Under these circumstances Mrs. Anderson renewed the note at a later time, and executed the note in suit. The note in suit bears date May 28, 1931. Austin L. Fluckey executed a last will and testament on August 8, 1931, and also executed a codicil thereto on February 28, 1933. These instruments were duly admitted to probate in Holt county.

The fourth paragraph of the codicil includes the following:

"Three-fourths of all of my property remaining, whereever situated and whether real, personal or mixed I give, devise and bequeath to my children Annella M. Hopkins, Bertha Anderson and James L. Fluckey, share and share alike."

The appellant insists that under the circumstances set forth the controlling principle is: "A married woman who signs a note as surety for her husband and receives no part of the consideration and does not agree to bind her separate property and estate for the payment of the debt and at the time she signed the original note as surety for her husband, and all renewals thereafter, she did not have any separate property or estate and that she signed renewal notes after the death of her husband, but without any new

consideration, such a note is unenforceable." In support of this statement *Bank of Commerce v. McCarty,* 119 Neb. 795, 231 N. W. 34, is cited.

Appellant also insists that the doctrine of reciprocal promises is inapplicable, because reciprocal promises as the basis of a valid agreement must be equally obligatory upon the parties, so that each may have an action thereon to enforce the same, otherwise such agreement is *nudum pactum.*

Appellee contends that the evidence in the record establishes a definite agreement between the daughter and the father; that a promise to defendant that under certain circumstances she would share in decedent's estate may be inferred from circumstances and statements of the deceased. It is also insisted by appellee that the question is one of fact, and that the inference may be drawn from circumstantial as well as direct evidence. *McDonald Bros. Co. v. Koltes,* 155 Minn. 24, 192 N. W. 109. We deem the question of the determination of the validity of the reciprocal promises of this father and his daughter not necessary for the proper disposition of this case.

It is thought that this view of the doctrine of consideration and the necessity of the same to assure the validity of contracts, as advanced by appellee, is too restricted as applied to the facts of the record. The defendant, under the situation outlined, certainly could reasonably expect that her written promise to pay would induce action in the event her father made a will which would assure her a share of his estate, if he died testate, or if he made no will, forbearance on her father's part that would assure her a distributive share of his estate by inheritance. This anticipated action, it appears, was induced. The evidence discloses that the father actually made a will, and that by its terms she received the equivalent of an undivided one-fourth of his estate, both real and personal, as a legacy. On the other hand, the fact is patent that a refusal of the daughter to conform to the father's demand for the renewal of her note would have resulted in the loss of her inheritance in

his estate. Now that the father is dead, may the daughter retract the promise on which the father relied, to the prejudice of his legatees?

The principles of law necessarily invoked by the facts of the instant case, as stated in a standard text, are:

"It is generally true that one who has led another to act in reasonable reliance on his representations of fact cannot afterwards in litigation between the two (or their representatives) deny the truth of the representations, and some courts have sought to apply this principle to the formation of contracts, where, relying on a gratuitous promise, the promisee has suffered detriment. It is to be noticed, however, that such a case does not come within the ordinary definition of estoppel. If there is any representation of an existing fact, it is only that the promisor at the time of making the promise intends to fulfil it. As to such intention there is usually no misrepresentation and if there is, it is not that which has injured the promisee. In other words, he relies on a promise and not on a misstatement of fact; and the term 'promissory' estoppel or something equivalent should be used to make the distinction." 1 Williston, Contracts (Rev. ed.) sec. 139.

The applicable rule as found in the Restatement of the Law is:

"A promise which the promisor should reasonably expect to induce action or forbearance of a definite and substantial character on the part of the promisee and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise." Restatement, Contracts, sec. 90.

We made a practical application of the foregoing doctrine in *Ricketts v. Scothorn*, 57 Neb. 51, 77 N. W. 365. In that case we sustained the validity of a promissory note and affirmed the judgment entered thereon, when challenged because of insufficient consideration. The facts involved in the *Ricketts* case, as shown by the opinion of Sullivan, J., are as follows:

"According to the undisputed proof, as shown by the

record before us, the plaintiff was a working girl, holding a position in which she earned a salary of $10 per week. Her grandfather, desiring to put her in a position of independence, gave her the note, accompanying it with the remark that his other grandchildren did not work, and that she would not be obliged to work any longer. In effect he suggested that she might abandon her employment and rely in the future upon the bounty which he promised. He, doubtless, desired that she should give up her occupation, but whether he did or not, it is entirely certain that he contemplated such action on her part as a reasonable and probable consequence of his gift. Having intentionally influenced the plaintiff to alter her position for the worse on the faith of the note being paid when due, it would be grossly inequitable to permit the maker, or his executor, to resist payment on the ground that the promise was given without consideration."

True, in such *Ricketts* case, it appears there was a plea in the nature of an equitable estoppel presented by the defendant, and a technical estoppel was not formally pleaded in the instant case. However, "Where the facts showing estoppel are in issue and are admissible for any purpose under the pleadings, estoppel is available as a defense without being specially pleaded." So, too, "Evidence of estoppel is admissible without being pleaded in order to rebut evidence introduced by the opposite party." 21 C. J. 1246. See, also, *City Nat. Bank of Hastings v. Thomas,* 46 Neb. 861, 65 N. W. 895; *Seng v. Payne,* 87 Neb. 812, 128 N. W. 625; *Smith v. Liberty Life Ins. Co.,* 118 Neb. 557, 225 N. W. 688.

It will be noted that the Restatement doctrine is not related to pleading but is a statement of substantive law. As applied to the facts in the instant case, it supplies sufficient consideration, or the equivalent of it, to assure the validity of the transaction involved. Whether proper terminology would require it to be designated as conventional consideration may be a question for the text-writers, but a careful analysis of the entire situation discloses that beyond ques-

tion it amounts to a technical consideration because of the necessary detriment to the promisee involved.

It follows, therefore, that the judgment of the trial court is as to all matters of substance correct, and it is

AFFIRMED.