NORTHWESTERN ENGINEERING CO., Appellant, v. ELLERMAN, et al, Respondents

(10 N. W.2d 879.)

(File No. 8610. Opinion filed August 20, 1943.)
Rehearing Denied October 20, 1943.

**Alan Bogue** and **Everett A. Bogue,** both of Vermillion, and **Philip & Leedom,** of Rapid City, for Appellant.

**W. W. French, H. A. Doyle,** and **Frank Biegelmeier,** all of Yankton, for Respondents.

RUDOLPH, J. ▆ Before we reach the merits of this controversy, it is necessary that we pass upon respond-

ents' motion to dismiss the appeal. Appellant did not petition for an allowance of this appeal under the provisions of SDC 33.0704. It is the contention of respondents, in support of this motion, that the order from which the appeal is taken is not an order from which the appellant may appeal as a matter of right. So far as material to this motion, the facts disclose that in the lower court the defendants (respondents) made a motion to dismiss the plaintiff's (appellant) complaint on the ground that the same failed to state a cause of action. After a hearing the trial court entered its order sustaining the motion, the formal parts of such an order being as follows: "Ordered that said motion (of defendants) to dismiss the above entitled action, with prejudice to another action, be, and the same is hereby sustained; and that defendants have judgment thereon; to which plaintiff excepts and its exception is hereby settled and allowed; but with leave to the plaintiff to amend its amended complaint within twenty days of notice of filing this Order should plaintiff be so advised. Dated September 12, 1942." It is from this order that the appeal is taken.

Under the provisions of SDC 33.0701 an appeal to this court may be taken from:

"(1) A judgment;

"(2) An order affecting a substantial right, made in any action, when such order in effect determines the action and prevents a judgment from which an appeal might be taken;

"(3) An order granting a new trial;

"(4) Any final order affecting a substantial right made in special proceedings, or upon a summary application in an action after judgment;

"(5) An order which grants, refuses, continues, dissolves, or modifies any of the remedies of arrest and bail, claim and delivery, injunction, attachment, garnishment, receivership, or deposit in court;

"(6) Any other intermediate order made before trial, any appeal under this subdivision, however, being not a matter of right but of sound judicial discretion, and to be

allowed by the Supreme Court in the manner provided by rules of such Court only when the Court considers that the ends of justice will be served by determination of the questions involved without awaiting the final determination of the action or proceeding."

The order appealed from is not a judgment as defined by SDC 33.1701. The order itself contemplates the entry of a judgment and does not purport by its terms to be "the judicial act of the Court in pronouncing the sentence of the law upon the facts in controversy as ascertained by the pleadings and the verdict or decision.". See Robinson v. Glover, 59 S. D. 332, 239 N. W. 848; Bode v. New England Inv. Co. et al., 1 N. D. 121, 45 N. W. 197; Loper et al. v. Hosier, Tex. Civ. App., 148 S. W.2d 889, and cases cited in note to In re Weber, 4 N. D. 119, 59 N. W. 523, in 28 L. R. A. 621. The order does not come within subdivisions 3, 4 or 5 of SDC 33.0701 as set out above. It follows that the order is either an order falling within subdivision 2 of the code section from which an appeal is permitted as a matter of right or it is an intermediate order within the meaning of subdivision 6. In order to appeal as a matter of right from orders as classified by subdivision 2, three things must appear: First, the order must affect a substantial right; second, the order must in effect determine the action; and third, the order must prevent a judgment from which an appeal might be taken. While it appears that the order under consideration does affect a substantial right and does in effect determine the action (the appellant having elected to stand upon its complaint and not amend), nevertheless, it appears from the order itself, that it does not prevent a judgment from which an appeal might be taken. We are of the opinion, therefore, that appellant was not entitled as a matter of right to appeal from this order.

By its briefs filed herein appellant has virtually conceded that it is not entitled to appeal from this order as a matter of right. However, appellant now asks the court to act under the power conferred by SDC 33.0729 and allow the appeal. This section of our Code is as follows: "When a

party shall in good faith give notice of appeal, and shall omit, through mistake or accident, to do any other act necessary to perfect the appeal or make it effectual, including the giving of a proper undertaking for costs and damages, or to stay proceedings, the court from which the appeal is taken, or the presiding judge thereof, or the Supreme Court or any one of the Judges thereof, may permit an amendment, or the proper act to be done, including the giving of a new undertaking, on such terms as may be just."

The notice of appeal from this order having been served and filed within the time prescribed by SDC 33.0702, we are of the opinion that the court has acquired jurisdiction to the extent that it is authorized to act upon appellant's present request for permission to appeal. SDC 33.0704, which provides for the petition for the allowance of an appeal, does not provide that an allowance must be granted within the sixty-day period within which the appeal must be taken. This section simply provides that a petition for allowance must be served and filed with the notice of the appeal; the time within which the appeal may be allowed or denied is within the discretion of the court. We are of the opinion, therefore, that it is the serving of the notice of appeal within the statutory time that confers jurisdiction upon the court and that the act of filing the petition for allowance falls within that class of acts described in SDC 33.0729 as "any other act necessary to perfect the appeal or make it effectual." In the case of Reich v. Martin et al., 61 S. D. 311, 248 N. W. 495, 496, this court overruled the case of Aldrich v. Public Opinion Publishing Co. et al., 27 S. D. 589, 132 N. W. 278, and any other opinion of this court which announced a rule contrary to the following: "When notice of appeal is served and filed in good faith this court acquires jurisdiction of the cause, at least to such an extent as to authorize and permit this court (even though the time for taking the appeal has expired) in its discretion and upon sufficient showing to permit the subsequent doing of any other act necessary to perfect the appeal or make it effectual, including the amendment of an

undertaking, the serving of an undertaking, or the filing of an undertaking, even though no such undertaking has been previously served or filed." Under this broad and liberal rule we think there can be no question concerning the power of this court to act upon appellant's request.

██ We believe we should exercise our power and permit the appeal in this case. The appeal from the order was not taken until after the twenty-day period, within which plaintiff was permitted to amend its complaint, had expired. The entry of a judgment based upon this order was a mere formality, and while the entry of such judgment was necessary to give plaintiff the right to appeal as a matter of right, the practical effect of the order standing by itself is to determine the action and all the issues adversely to the plaintiff. It might be that the order would not constitute a bar to a subsequent action (Bode v. New England Investment Co., supra), but its effect in so far as plaintiff's present action is concerned is a determination of all issues adversely to the plaintiff. Under these circumstances, we believe the mistake or inadvertence, in failing to file and serve a petition for allowance of the appeal with the notice of appeal, should be excused. While it is true that there is before us no formal application for the allowance of this appeal, the procedure of requiring plaintiff to make such application, under the facts here presented, would simply be a consumption of time and effort which could add nothing to the facts which now appear in this court. We are of the opinion, therefore, that the ends of justice require that the court allow the appeal at this time and consider the case upon its merits.

The plaintiff seeks to recover damages for the failure of the defendants to comply with the terms of a certain written agreement signed by the parties, which is made a part of the complaint, described as Exhibit "A" and which is as follows:

"Exhibit 'A'

"This agreement made this 20th day of March, 1942, and between the Northwestern Engineering Company, of

Rapid City, South Dakota, a corporation of the State of South Dakota, hereinafter called party of the first part, and Ellerman & McLain, of Yankton, South Dakota, co-partners, hereinafter called party of the second part,

"Witnesseth: Whereas party of the first part proposes to submit a bid to the U. S. Engineer Office, Rapid City, South Dakota, for the construction of a portion of the Rapid City Air Base project, specifically Schedule 3, designated as Water Supply, Storage Facilities, Sewage Disposal System and Sewage Treatment Plant, in accordance with Invitation No. 631-42-58 issued by the U. S. Engineer Office, Fort Peck, Montana, which bids are to be opened at Rapid City, South Dakota, at 1:00 P. M. March 21, 1942, and

"Whereas party of the second part desires to subcontract a portion of the above-mentioned Schedule 3, namely section IV-Sewer System, in the event that party of the first part submits the lowest bid and is awarded the contract for Schedule 3;

"Therefore, it is hereby agreed that in the event of the award of the above-mentioned contract to party of the first part, the party of the second part shall perform all the work involved in the construction of Schedule 3, Section IV, at the following specified unit prices: (Here appear itemized material quantities and prices, totaling $79,098.26)

"It is further agreed that party of the second part shall perform all work above mentioned, in full accordance with the plans and specifications as issued by the U. S. Engineer Office in the above-mentioned invitation and shall complete the same within the contract time limit allotted to this section of the work, or will be held liable for the liquidated damages per day of delay.

"It is further agreed that party of the second part shall include in the unit prices above mentioned, and shall be held liable for, all incidental expenses involved in the construction of the above work, such as paying all payrolls, paying all Workmen's Compensation insurance, Property Damage and Public Liability insurance, Social Security taxes, and any other similar items pertaining to the portion

of work under contract required under the specifications of the contract.

"It is further agreed that in the event a contract for the above-mentioned work is entered into, the party of the first part shall make payment to party of the second part for the total amount of completed work at the end of each pay period in the full amounts received by the party of the first part from the U. S. War Department.

"Further, party of the second part agrees to furnish a performance bond for 100% of the total amount of the sub-contract to the party of the first part upon execution of a contract for the performance of the above-mentioned work, and as evidence of good faith the party of the second part submits herewith a bidder's bond signed and sealed by an accredited surety company guaranteeing that such performance bond will be furnished to the party of the first part upon execution of the contract.

Northwestern Engineering Company
By M. Adelstein President

Ellerman & McLain
By D. J. McLain Partner
By A. S. Ellerman Partner
Party of the second part

"Witnesses:
"J. L. Materi
"M. Levine"

As disclosed by the amended complaint the original agreement was modified by a writing endorsed thereon, which is as follows: "Party of the second part has requested increase of 15c per foot prior to opening of bids which request party of the first part agrees to consider prior to signing contract and agrees to an upward revision in this contract." After setting forth the agreement and its subsequent modification the amended complaint alleges that, relying upon the agreement, the plaintiff submitted a bid to the United States Government as contemplated in the agreement and that this bid was accepted; that the defendants knew the plaintiffs were the successful bidders and there-

after they refused to carry out the terms and conditions of the agreement; that because of the refusal of the defendants to comply with the agreement the plaintiff was compelled to enter into a contract with parties other than the defendants for the performance of the work described in the agreement at a price in excess of the price contained in the agreement between the plaintiff and the defendants.

 We first consider the agreement as originally entered into and seek to determine the rights of the parties thereunder without regard to the subsequent modification relating to the increase of price. It was the position of the trial court as disclosed by the written opinion filed herein and is the position of the respondents in this court that the agreement lacks mutuality. In support of this contention, respondents argue that under the terms of the agreement the plaintiff was not bound in any manner whatsoever, that is, there was no obligation upon the plaintiff to submit a bid on the airbase project; neither did the plaintiff part with anything in consideration for the promise of the defendants. Respondents' contention that the agreement lacks mutuality in reality amounts to a contention that there was no consideration given for the promise of the defendants. Williston on Contracts, Revised Edition, p. 504, states: "It is often stated, as if it were a requisite in the formation of contracts, that there must be mutuality. This form of statement is likely to cause confusion and however limited is at best an unnecessary way of stating that there must be valid consideration."

We are inclined to agree with respondents' contention and find that the agreement is without the customary elements of a valid consideration. Is this fatal to appellant's action? The pleaded facts disclose that knowing of appellant's intention and desire to place a bid on the airport project, the respondents promised to enter into a binding contract to do the specified work at a fixed price, this promise was not withdrawn, and relying upon the promise, the appellant submitted its bid to the government, as contemplated in the agreement. Obviously it would seem unjust

and unfair, after appellant was declared the successful bidder and imposed with all the obligations of such, to allow respondents to then retract their promise and permit the effect of such retraction to fall upon the appellant. Other courts have been confronted with somewhat similar situations to that which now confronts us. The result has been that there has arisen in the law a doctrine often referred to as "promissory estoppel." Williston on Contracts, Revised Edition, p. 494. While the appellant has not based its argument for a reversal upon this doctrine by name, nevertheless, we believe that the argument advanced by appellant has as its basis the principle of this doctrine. The doctrine finds expression in Section 90 of the Restatement of the Law of Contracts, as follows: "A promise which the promisor should reasonably expect to induce action or forbearance of a definite and substantial character on the part of the promisee and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise."

Giving effect to this doctrine it was held that a promise was enforceable although without consideration, which was reasonably expected to and did induce a plaintiff from asserting a claim against an estate at a time when such assertion would have been effective. Saunders Co. v. Gailbraith, 40 Ohio App. 155, 178 N. E. 34. Also, that a written order signed by the defendant and delivered to the plaintiff became a binding contract when the plaintiff filled the order in accordance with its terms and shipped the goods before revocation of the order. Port Huron Machinery Co. v. Wohlers, 207 Iowa 826, 221 N. W. 843. It has also been held, by giving effect to this doctrine, that a creditor's promise to a debtor that payment need not be made at the time due is binding upon the creditor even though the promise is not supported by a consideration. In re Campbell, 9 Cir., 105 F.2d 197, 124 A. L. R. 1243. See, also, Fluckey v. Anderson, 132 Neb. 664, 273 N. W. 41; Harvey v. J. P. Morgan & Co., 166 Misc. 455, 2 N. Y. S.2d 520; Fried v. Fisher, 328 Pa. 497, 196 A. 39, 115 A. L. R. 147. There are numerous decisions

in charitable subscription cases which have enforced promises because of the promisee's action in reliance thereon. See cases cited in Williston on Contracts, Revised Edition, p. 495. One opinion has refused to give effect to the doctrine under a state of facts somewhat similar to those which now confront us. Baird Co. v. Gimbel Bros., 2 Cir., 64 F.2d 344. This opinion, notwithstanding the eminence of its author, has been the subject of rather severe criticism. 20 Va. L. Rev. 214, 28 Ill. L. Rev. 419. The facts there disclosed that the parties by their agreement provided for an acceptance of an offer " '* * * after general contract has been awarded.' ", and the offer was withdrawn before such acceptance. Judge Hand seemed to place special emphasis upon this provision and stated: "* * * it seems entirely clear that the contractors did not suppose that they accepted the offer merely by putting in their bids."

However, the last portion of the opinion apparently rejects the doctrine of promissory estoppel as applied to the transaction involved. In spite of this opinion, we believe that reason and justice demand that the doctrine be applied to the present facts. We cannot believe that by accepting this doctrine as controlling in the state of facts before us we will abolish the requirement of a consideration in contract cases, in any different sense than an ordinary estoppel abolishes some legal requirement in its application. We are of the opinion, therefore, that the defendants in executing the agreement made a promise which they should have reasonably expected would induce the plaintiff to submit a bid based thereon to the Government, that such promise did induce this action, and that injustice can be avoided only by enforcement of the promise.

We think it is clear from the agreement and its subsequent modification that the promise of the defendants was a promise to enter into a contract to do the work. However, the terms of the contract to which the promise related are set forth in the agreement, Exhibit "A", in such detail that, we conclude, it was the intention of the parties to be bound according to the terms of Exhibit "A" and that

the subsequent contract which the parties contemplated was a mere formality. See Annotation 122 A. L. R. 1232. Respondent contends that the addition to the agreement relating to the price renders the whole transaction so indefinite and uncertain that it is without any effect whatsoever. We do not agree with this contention. Respondents' promise stood subject only to the modification, which increased the price 15c per foot. The situation is analogous to that, confronting the court in the case of Doyle v. Edwards, 15 S. D. 648, 91 N. W. 322, wherein it was held that where a doctor performed an operation with the understanding that he should be paid therefor from $200 to $400 there was a valid and binding contract for $200 in any event. So in this case we believe respondents' promise was, in any event, binding upon them as modified by the subsequent demand for an increase of 15c per foot. Obviously, after the modification of the agreement, appellant could not hold respondents to the promise as originally made. But it should be noted that respondents did not purport to retract the promise, they simply modified it by the increase in price. The promise as modified was a promise to enter into a contract to do the work at the original price plus the 15c per foot.

The judgment appealed from is reversed.

All the Judges concur.