JANKE CONSTRUCTION COMPANY, INC., a Wisconsin Corporation, Plaintiff,

v.

VULCAN MATERIALS COMPANY, a New Jersey Corporation, Defendant.

No. 71–C–131.

United States District Court, W. D. Wisconsin.

Oct. 21, 1974.

John W. Kelley, Kelley, Weber & Bolte, S. C., Wausau, Wis., for plaintiff.

Claude J. Covelli, Boardman, Suhr, Curry & Field, Madison, Wis., for defendant.

## OPINION AND ORDER

ROSENSTEIN, District Judge.

In this action, plaintiff, a general contractor, alleges that defendant, a producer of construction materials, including reinforced concrete pipe, agreed to provide plaintiff with pipe and fittings at a per unit cost, for a marine construction project at the University of Wisconsin at Milwaukee, Wisconsin; that defendant expressly warranted and represented to plaintiff that defendant's products would meet the specifications required for that project; that plaintiff, in reliance thereon, used defendant's prices in bidding on the marine project and was awarded the contract; that following the award, defendant proposed to provide plaintiff with pipe and fittings which did not meet the specifications and which were rejected by the project engineers; and that plaintiff was thereby compelled to purchase the specified materials from another supplier at a higher cost, sustaining damages of $40,442.40.

Jurisdiction is based on diversity of citizenship and the parties do not contest that Wisconsin law applies. The case was tried to this Court without a jury, briefs were submitted, and the matter is now ripe for disposition.

Plaintiff, a Wisconsin corporation with its principal offices near Wausau, Wisconsin, has been engaged in various types of construction work, including highway, sewer, airport and marine projects. Defendant, a New Jersey corporation, operates quarries and has sand, gravel, aggregate, and redi-mix concrete plants in several states. In 1970, it also operated a concrete pipe plant located in Illinois which produced only AWWA (American Water Works Association) Specification C302 pipe.

In February 1970, the State Bureau of Engineering, on behalf of the Regents of the University of Wisconsin, publicly invited submission of sealed bids for the construction of condenser water transmission lines, lake piping and a pumping station for the University of Wisconsin-Milwaukee campus. The project was intended to provide the University with its own cooling system. The bids were to be opened at 2:00 P. M., on March 10, 1970, in Madison, Wisconsin.

The general construction, land, marine, and electrical work portions of the project were to be bid on separately, each portion requiring a separate lump sum bid. The marine portion of the work included the furnishing and installation of water intake and return lines into Lake Michigan. The materials required for marine piping included concrete subaqueous pipe in full compliance with either AWWA Specification C300 or AWWA Specification C301. The main contract also contained an "or equal" clause, permitting use of non-specified materials of equal quality to those specified if they were considered

equally acceptable to and approved by the project engineers.

Plaintiff, intending to bid on the marine work, obtained price quotations from suppliers of the various materials required for that portion of the project. On March 5, 1970, Jerry Janke, then vice-president of plaintiff, received by telephone from a Vulcan representative price quotations for the various concrete pipe items to be used in the marine work. Janke made a memorandum of the prices quoted, but did not inquire during this conversation whether defendant proposed to supply C300 or C301 pipe, nor did the caller specify the quality or type of pipe Vulcan intended to furnish.[1] Defendant's prices were $40,000 below that quoted by Interpace, another subaqueous concrete pipe supplier.

On the evening of March 9, 1970, Jerry Janke and his brother, James Janke, owner of plaintiff, checked in at a Madison hotel for the purpose of submitting their bid the next day. Around midnight they were visited in their hotel room by Alex Barry, then general manager of Vulcan's Wisconsin operation, and Peter W. Fox, a salesman for defendant's sand, gravel, crushed limestone, and redi-mix concrete.

While it is not clear whether the visit was only social or included some discussion of Vulcan's ability to furnish the pipe for the project, all parties present at that visit agree that there was no reference to the particular specifications or type of pipe that Vulcan proposed to supply. The next day, shortly prior to submitting his bid, James Janke met Barry in the hallway of the State Office Building. Janke was concerned because of the disparity in the prices quoted by Vulcan and Interpace. He requested and received assurance from Barry that Vulcan could furnish the pipe for the project. During that meeting Barry

---

1. Janke stated: "Pipe suppliers or any supplier giving quotations on projects normally don't bother to call you with a price or quotation unless they know they are going to be able to furnish the material, so I normally don't ask. If they call up and say I have some prices for you on this job, we want to sell it, I take the prices."

also placed a telephone call to someone at Vulcan who confirmed his statement.

According to Barry, Janke merely inquired at this meeting whether Vulcan could reduce its quoted prices on the pipe, and his telephone call to Vulcan's vice-president was made only to confirm his statement that prices would not be reduced.

Janke, who had relied upon Vulcan's quoted pipe prices in calculating his prime bid, thereupon submitted it and was subsequently awarded the contract.

Within the week after the bid opening plaintiff received a written quotation fro Vulcan setting forth the same prices that were quoted to Jerry Janke over the telephone on March 5, but stating that the quotation was for AWWA C302 pipe. The writing is dated March 6, but it is not known when it was mailed.

The record does not indicate the date when plaintiff discovered that defendant was offering to supply C302 pipe and not the pipe listed in the specifications. However, between March 10 and March 23, James Janke met three times in Milwaukee and in Madison with the engineers for the State of Wisconsin, a representative from the University, Alex Barry, and Art Littva of Vulcan's engineering department in an effort to persuade the State to accept the C302 pipe. Littva then sent Janke specifications and shop drawings showing use of the C302 pipe on the marine project, and requested Janke to submit them under the "or equal clause." The plans were submitted as requested, and were rejected by the State's consulting engineers as not approved.

In response to James Janke's inquiry as to why the pipe did not meet specifications the engineers stated that the pipe was not AWWA C300 or C301 as specified; was not steel cylinder type; was not designed for an internal pressure of 5 psi; and did not have a beam strength equal to the pipe specified.

The engineers subsequently requested Janke to submit shop drawings using design conditions and materials as specified, stating that time was critical to the completion of the project. Plaintiff was then forced to buy the specified pipe from Interpace at a cost of $197,093.50, which was $39,942.40 over the $157,101.10 it would have paid for Vulcan's pipe in accordance with the latter's quotation. James Janke considered $150 to $200 per day to be the reasonable and fair value of his time spent in attending the meetings at Madison and Milwaukee with the state engineers on Vulcan's pipe.

The record discloses that the University of Wisconsin–Milwaukee project was first opened for bidding on May 21, 1969, but at that time it had to be bid on as an entire unit. Plaintiff had bid as a subcontractor with a prime contractor on the marine portion, using Vulcan's prices in preparing its bid. However, there was a dispute at the time between the University and the City of Milwaukee as to whether the University should connect to the City's water system and, although the bids were opened, the contract was never awarded.

Defendant's Exhibit 1, a handwritten quotation sheet addressed to plaintiff and dated May 19, 1969, lists prices for C302 pipe for the University water project. Defendant's Exhibit 2, a typed quotation sheet addressed to plaintiff, dated May 27, 1969, some six days after the bid was opened, lists the prices for C302 pipe for that same project. However, there is no evidence of record, and it is not claimed, that these sheets were ever forwarded to Janke.

Plaintiff has had previous dealings with defendant, having purchased C302 pipe from it for a project in Racine, Wisconsin.

Evidence was adduced at the trial as to the normal bidding practices in the construction industry in the area. The contemplated project is generally listed or advertised in trade magazines and in the "Dodge Reports," a daily construction news service which lists proposed construction activity for various areas of the country. A subscriber to the "Dodge Reports" for a particular area

may inspect the plans for a project in any Dodge plan room located in that area. The University of Wisconsin–Milwaukee project plans were available in Dodge plan rooms located in Milwaukee, Madison, Green Bay, and Eau Claire, Wisconsin.[2]

An interested materials supplier checks the plans and specifications to determine if he can supply any of the required materials. He then submits a quotation by telephone, mail, or both to the contractors interested in bidding on the project. It is in this manner that contractors usually obtain quotations from the competing suppliers and subcontractors. These quotations are used by the contractors to estimate their own costs in preparing their bids. Normally, the twenty-four hour period preceding the prime bid deadline is one of great activity, with the subcontractors and suppliers making the rounds of the contractors who are still preparing their bids. By this time the first quotations have generally become known and the prices are often revised downward at the last minute, with the prime contractors revising their bids accordingly.

The contractor usually purchases the materials from the supplier whose prices he relied upon in preparing his bid. However, the contract is not entered into until after the contractor has been awarded the contract and the project engineers have approved the material, if such approval is needed. The supplier then prepares the shop drawings for the project after the successful bidder signs a letter of intent to purchase the material.

The Janke brothers testified that the supplier normally submits a price on material that will meet the specifications. However, Jerry Janke stated, if the supplier were offering non-specified material under the "or equal" clause he would, in the normal course of trade, alert the contractor to that fact so that the latter, if he relies upon this quotation, would note on his bid that he proposed to supply alternate material under the "or equal" clause and that his bid is based on the substitute material.

In this manner the contractor would protect himself from having to perform on the bid, if it were accepted, in the event that the project engineers rejected the non-specified material as unsuitable.

Jerry Lapish, a marine contractor appearing for defendant, testified that when a quotation is received it is customarily the contractor's responsibility to check the specifications listed for the material on the quotation with the material specifications listed in the project contract to determine for himself whether the supplier is offering non-specified material.

Plaintiff views this action as one grounded in contract and governed by the Uniform Commercial Code which was adopted by Wisconsin (Wis.Stat. chs. 401–409). It contends that (1) defendant breached an alleged contract to furnish suitable and acceptable materials for the project, and (2) knowing that plaintiff relied upon its skill and judgment in furnishing the materials for the project, defendant had impliedly warranted their fitness for that particular purpose.

■ I agree with defendant that no binding contractual obligation existed under the Code. The mere use of Vulcan's bid was not an acceptance in law which gave rise to a contract with plaintiff. N. Litterio & Company v. Glassman Construction Company, 115 U.S. App.D.C. 335, 319 F.2d 736 (1963); Norcross v. Winters, 209 Cal.App.2d 207, 25 Cal.Rptr. 821 (1962); Drennan v. Star Paving Company, 51 Cal.2d 409, 333 P.2d 757 (1958); Northwestern Engineering Co. v. Ellerman, 69 S.D. 397, 10 N.W.2d 879 (1943).

Defendant had not offered to make its bid irrevocable, nor was there an option supported by consideration. Thus its bid does not meet the "firm offer" re-

2. As plaintiff did not furnish defendant with the project plans, Vulcan apparently obtained them from one of these sources or from the State project engineers.

quirement of section 402.205 Wis.Stat., which states:

> "An offer by a merchant to buy or sell goods in a signed writing which by its terms gives assurance that it will be held open is not revocable, for lack of consideration, during the time stated or if no time is stated for a reasonable time, * * *".

■ However, the absence of a contractual basis to plaintiff's claim is not fatal to its action. The facts which plaintiff has pleaded and relied upon to support its claim and to which defendant has responded in entering its defense give rise to the application of the doctrine of promissory estoppel.[3] This doctrine is expressed in the Restatement of the Law of Contracts § 90 as follows:

> "A promise which the promisor should reasonably expect to induce action or forbearance of a definite and substantial character on the part of the promisee and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise."

■ In Hoffman v. Red Owl Stores, Inc., 26 Wis.2d 683, 696, 133 N.W.2d 267, 274 (1965), the Supreme Court of Wisconsin, in a significant and what may prove to be far reaching opinion, expressly adopted the doctrine of promissory estoppel, stating:

> "Because we deem the doctrine of promissory estoppel, as stated in sec. 90 of Restatement, 1 Contracts, is one which supplies a needed tool which courts may employ in a proper case to prevent injustice, we endorse and adopt it."

In *Hoffman,* the court found that defendants had promised to establish plaintiffs as franchise operators of one of their stores in a certain town if they would invest a specific amount of capital and fulfill other conditions. During a two year period of negotiations, plaintiffs, relying upon defendants' promise, and in fulfillment of the conditions, sold their bakery and grocery businesses and a building, moved to another town, incurred moving expenses, made a down payment on a lot, and paid one month's rent on a home in the town where they

---

**3.** The fact that plaintiff misconceived the legal theory of its case does not preclude it from obtaining relief under another legal theory. Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a pleading which contains a claim for relief requires only a "short and plain statement of the claim showing that the pleader is entitled to relief." As stated in Moore's Federal Practice, 2d Ed., Vol. 2A, § 8.13, p. 1695:

"The courts have recognized that the function of pleadings under the Federal Rules is to give *fair notice* of the claim asserted so as to enable the adverse party to answer and prepare for trial, to allow for the application of the doctrine of res judicata, and to show the type of case brought, so that it may be assigned to the proper form of trial."

See also the reference in Dotschay v. National Mutual Insurance Company, 246 F.2d 221, 223 (5th Cir. 1957) to—

" * * * our liberal rule of federal practice under which the complaint is not to be dismissed because the plaintiff's lawyer has misconceived the proper legal theory of the claim, but is sufficient if it shows that the plaintiff is entitled to *any* relief which the court can grant, regardless of whether it asks for the proper relief."

It is also noted that, in Babler v. Roelli, 39 Wis.2d 566, 159 N.W.2d 694 (1968), the case was tried on a contract theory but the trial court held that no contract was proved. Plaintiff abandoned that theory on appeal and asserted his right to recover on the theory of promissory estoppel. The Wisconsin Supreme Court held that plaintiff was not precluded from raising this point for the first time on appeal, and in part stated, 39 Wis. 2d at 572–573, 159 N.W.2d at 697:

"In Winnebago Homes, Inc., v. Sheldon (1966), 29 Wis.2d 692, 700, 701, 139 N.W.2d 606, we made it clear that the failure to plead a cause of action for promissory estoppel in the trial court precludes the plaintiff, as a matter of right, from raising the question for the first time on appeal. However, in the instant case, the facts which plaintiff relies upon to support this new cause of action are of record, and the defendant-respondent has been able to defend upon the basis of the facts as found by the trial court. Under these circumstances, where the consideration of promissory estoppel for the first time on appeal does not result in hardship or inequity to either party, we will proceed upon the basis of the facts found by the trial court to dispose of the plaintiff's contention upon the merits."

had been led to believe that a franchised store would be available. Negotiations finally broke off after defendants demanded a larger capital investment than originally requested. The Court found that the factual elements of promissory estoppel were present and concluded that injustice would result if plaintiffs were not granted some relief because of defendants' failure to keep their promises which induced plaintiffs to act to their detriment.

■ The opinion is significant in that the Court clearly distinguished between an action on a promise based on promissory estoppel and one based on breach of contract.[4] The Court further held that a promise actionable under § 90 need not have all the elements of an offer that would result in a binding contract between the parties if the promisee were to accept the same. It emphatically said, 26 Wis.2d at 697–698, 133 N.W. 2d at 275:

"Originally the doctrine of promissory estoppel was invoked as a substitute for consideration rendering a gratuitous promise enforceable as a contract. See Williston, Contracts (1st ed.), p. 307, sec. 139. In other words, the acts of reliance by the promisee to his detriment provided a substitute for consideration. If promissory estoppel were to be limited to only those situations where the promise giving rise to the cause of action must be so definite with respect to all details that a contract would result were the promise supported by consideration, then the defendants' instant promises to Hoffman would not meet this test. However, sec. 90 of Restatement, 1 Contracts, does not impose the requirement that the promise giving rise to the cause of action must be so comprehensive in scope as to meet the requirements of an offer that would ripen into a contract if accepted by the promisee.

"Rather the conditions imposed are:

(1) Was the promise one which the promisor should reasonably expect to induce action or forbearance of a definite and substantial character on the part of the promisee?

(2) Did the promise induce such action or forbearance?

(3) Can injustice be avoided only by enforcement of the promise?

We deem it would be a mistake to regard an action grounded on promissory estoppel as the equivalent of a breach of contract action."

Having gained a firm foothold in Wisconsin, the doctrine has been extended there to third persons and held applicable as a basis for relief in actions by employees to receive pension benefits. Scheuer v. Central States Pension Fund, 358 F.Supp. 1332 (E.D.Wis.1973).

■ Although the Wisconsin authorities have not had occasion to consider the applicability of promissory estoppel to construction bidding cases, the doctrine has found increasing acceptance in other jurisdictions as a basis for a cause of action in litigation involving construction bids. Debron Corporation v. National Homes Construction Corporation, 493 F.2d 352 (8th Cir. 1974) (Construing Missouri Law); Tiffany Incorporated v. W. M. K. Transit Mix, Inc., 16 Ariz.App. 415, 493 P.2d 1220 (1972); Wargo Builders, Inc. v. Douglas L. Cox Plumbing & Heating, Inc., 26 Ohio App.2d 1, 268 N.E.2d 597 (1971); Constructors Supply Co. v. Bostrom Sheet Metal Works, Inc., 291 Minn. 113, 190 N.W.2d 71 (1971); Saliba-Kringlen Corp. v. Allen Engineering Co., 15 Cal. App.3rd 95, 92 Cal.Rptr. 799 (1971); School District No. 69 of Maricopa County v. Altherr, 10 Ariz.App. 333, 458

---

4. As the Court observed in N. Litterio & Company v. Glassman Construction Company, *supra* 319 F.2d at 738, the authorities do not "always keep clear the distinction between traditional rules of contract law and the principles of promissory estoppel."

For a more extensive treatment of this subject, see Henderson, "Promissory Estoppel and Traditional Contract Doctrine," 78 Yale L.J. 343 (1969).

P.2d 537 (1969); E. A. Coronis Associates v. M. Gordon Construction Co., 90 N.J.Super. 69, 216 A.2d 246 (1966); Reynolds v. Texarkana Construction Co., 237 Ark. 583, 374 S.W.2d 818 (1964); Union Tank Car Company v. Wheat Brothers, 15 Utah 2d 101, 387 P.2d 1000 (1964); N. Litterio & Company v. Glassman Construction Company, *supra*; Norcross v. Winters, *supra*; Air Conditioning Co. of Hawaii v. Richards Construction Company, 200 F.Supp. 167 (D. Haw.1961), affirmed on other grounds, 318 F.2d 410 (9th Cir. 1963); Drennan v. Star Paving Co., *supra*; Northwestern Engineering Co. v. Ellerman, *supra*.

I am in accord with the foregoing cases. There is no logical reason, particularly in light of the language used in *Hoffman*, why § 90 of the Restatement should not apply to the situation herein. "It is only right and just that a promise a promisor knows will induce action of a substantial character be enforced if it is in fact relied on." E. A. Coronis Associates v. M. Gordon Construction Co., *supra*, 216 A.2d at 251.

The rationale for application of promissory estoppel to construction bidding cases is perhaps best expressed in Drennan v. Red Star Paving Company, *supra*. That case involved an oral bid by a subcontractor for certain work at a school project on which plaintiff, the general contractor, was about to bid. As defendant's bid was the lowest, plaintiff computed his own bid on the basis of defendant's bid price. Plaintiff was the successful bidder but was informed the next day by defendant that it would not do the work at its quoted price. The California Supreme Court, applying the promissory estoppel rule to prevent defendant's revocation of its bid stated (333 P.2d at 760):

"* * * The very purpose of section 90 is to make a promise binding even though there was no consideration 'in the sense of something that is bargained for and given in exchange.' (See 1 Corbin, Contracts 634 et seq.) Reasonable reliance serves to hold the offeror in lieu of the consideration ordinarily required to make the offer binding.

* * * * * *

"When plaintiff used defendant's offer in computing his own bid, he bound himself to perform in reliance on defendant's terms. Though defendant did not bargain for this use of its bid neither did defendant make it idly, indifferent to whether it would be used or not. On the contrary it is reasonable to suppose that defendant submitted its bid to obtain the subcontract. It was bound to realize the substantial possibility that its bid would be the lowest, and that it would be included by plaintiff in his bid. It was to its own interest that the contractor be awarded the general contract; the lower the subcontract bid, the lower the general contractor's bid was likely to be and the greater its chance of acceptance and hence the greater defendant's chance of getting the paving subcontract. Defendant had reason not only to expect plaintiff to rely on its bid but to want him to. Clearly defendant had a stake in plaintiff's reliance on its bid. Given this interest and the fact that plaintiff is bound by his own bid, it is only fair that plaintiff should have at least an opportunity to accept defendant's bid after the general contract has been awarded to him.

"It bears noting that a general contractor is not free to delay acceptance after he has been awarded the general contract in the hope of getting a better price. Nor can he reopen bargaining with the subcontractor and at the same time claim a continuing right to accept the original offer. * * *"

Similarly, in Northwestern Engineering Co. v. Ellerman, *supra*, 10 N.W.2d at 883, the Court stated, in applying promissory estoppel:

"Obviously it would seem unjust and unfair, after appellant was declared the successful bidder and imposed with all the obligations of such, to allow respondents to then retract

their promise and permit the effect of such retraction to fall upon the appellant."

Under the guidelines set down in *Hoffman*, if plaintiff is to prevail in an action under § 90 of the Restatement, it must establish that a definite promise was made by defendant with the reasonable expectation that it would induce action of a definite and substantial character on plaintiff's part; that plaintiff had acted in justifiable reliance upon the promise to its detriment; and that injustice can be avoided only by enforcement of the promise.

I find substantial evidence to support each of the afore-described elements of promissory estoppel.

Jerry Janke received a definite offer by telephone on March 5, 1970, from Vulcan to supply the concrete subaqueous pipe required for the University of Wisconsin–Milwaukee project at the quoted prices. At no time prior to the awarding of the contract was plaintiff informed that defendant was proposing to furnish anything other than the pipe specified in the project plans. Furthermore, I find that throughout its course of dealing with the Janke brothers on this particular bid, defendant intentionally, and successfully, represented to plaintiff through its agents that it "would supply the pipe for the job" (R. 34), that is, the pipe specified in the plans.

The Janke brothers, not unreasonably, had relied upon the representations of Vulcan's Wisconsin representative, Alex Barry, whom they knew from previous business dealings, and who continued to assure them up to the bid deadline that Vulcan could and would supply the required pipe.[5] Accordingly, the Jankes, men of limited formal education and with no engineering or technical experience in concrete subaqueous piping, were never alerted to the fact that they were relying upon a bid which was based on non-specified material. If they had known that defendant was offering pipe under the "or equal" clause, they would have conditioned their bid in like manner if they still wanted to use Vulcan's pipe.

I find that plaintiff acted with reasonable care and prudence in relying upon Vulcan's offer, and that this offer included, as represented to plaintiff, a proposal to furnish the specified concrete subaqueous pipe.

Plaintiff suffered substantial detriment by acting in reliance upon defendant's bid. It was compelled to go forward on the contract and supply the specified pipe when defendant's products were rejected as unsuitable. Upon defendant's refusal or inability to furnish the required material, plaintiff had to purchase it from Interpace, the other pipe supplier, at a price which was $39,992.40 over defendant's bid. Injustice can be avoided only by enforcement of the promise; accordingly, plaintiff is entitled to reliance damages.

Defendant's contention that Barry lacked authority to make representations on its behalf concerning its offer to supply plaintiff with pipe lacks credibility under the circumstances herein. Barry's actions, including his midnight call on the Janke brothers, his meeting with them the next day prior to the bid deadline, his last minute call to Vulcan to confirm its offer, and his participation in meetings with Janke and state representatives after the awarding of the contract in an attempt to obtain approval for use of Vulcan's C302 pipe all belie defendant's disclaimers as to his *agency status*.

In any event, defendant is estopped to deny Barry's apparent authority under the circumstances outlined herein. See Debron Corporation v. National Homes Construction Corporation, 493 F.2d 352 (8th Cir. 1974). The rule in Wisconsin appropriate in this context is stated in

---

5. Barry's recollection that his last minute meeting with James Janke on March 10 and his confirming phone call to Vulcan's vice president concerned an attempt by Janke to get a lower price on the pipe seems scarcely credible in view of the fact that Vulcan's price was $40,000 below the quote Janke had received from Interpace.

Scheuer v. Central States Pension Fund, *supra,* 358 F.Supp. at 1339 as follows:

"\* \* \* [I]f a third person, because of appearances resulting from the manner in which the principal conducts his business, believes and has reasonable grounds to believe that the agent possessed power to act for the principal in the particular transaction, then the principal is responsible to such third person the same as if the agent possessed all the power he was assumed to possess. ABC Outdoor Advertising, Inc. v. Dolhun's Marine, Inc., 38 Wis.2d 457, 157 N.W.2d 680 (1968); Risdon, Inc. v. Miller Distributing Co., 29 Wis.2d 418, 139 N.W.2d 12 (1966); Voell v. Klein, 184 Wis. 620, 200 N.W. 364 (1924)."

One question remains. Can the statute of frauds, raised by defendant as a defense in the context of plaintiff's contractual claim, be raised as a defense to a claim for damages based on the theory of promissory estoppel?[6] The issue has not been raised in the Wisconsin courts and there is a split of opinion in other jurisdictions where this question has been considered.

Some states, such as New York, have held that promissory estoppel has no application where the oral contract comes within the statute of frauds except in cases involving charitable subscriptions. Kahn v. Cecelia Co., 40 F.Supp. 878 (S.D.N.Y.1941). Other jurisdictions have held that the defense of the statute is precluded either when there has been (1) a misrepresentation that the statute's requirements have been complied with, (2) a promise to make a memorandum which was also relied on by the promisee, or (3) a subsidiary promise not to raise the statute as a defense. Tiffany Incorporated v. W. M. K. Transit Mix, Inc., 16 Ariz.App. 415, 493 P.2d 1220 (1972); 21 Turtle Creek Sq., Ltd. v. New York St. Teach. Retire Sys., 432 F.2d 64 (5th Cir. 1970) (Construing Texas Law); Alaska Airlines v. Stephenson, 15 Alaska 272, 217 F.2d 295 (9th Cir. 1954); Easton v. Wycoff, 4 Utah 2d 386, 295 P.2d 332 (1956); Wolfe v. Wallingford Bank & Trust Co., 124 Conn. 507, 1 A.2d 146 (1938).[7]

Some jurisdictions, recognizing that the doctrine of promissory estoppel is based essentially on the principles of equitable estoppel and fraud, are loath to deny relief where the statute of frauds is raised as a defense and will enforce an oral promise otherwise coming within the statute. McIntosh v. Murphy, 52 Haw. 29, 469 P.2d 177 (1970); N. Litterio & Company v. Glassman Construction Company, *supra;* Miller v. Lawlor, 245 Iowa 1144, 66 N.W.2d 267 (1954); Sessions v. Southern California Edison Co., 47 Cal.App.2d 611, 118 P.2d 935 (1941).

In *McIntosh* the Supreme Court of Hawaii held that an oral contract of employment was enforceable and that money damages would be granted notwith-

---

6. In Wisconsin, the statute of frauds is set out in Sec. 402.201 Wis.Stats., which provides, in pertinent part:

"(1) Except as otherwise provided in this section a contract for the sale of goods for the price of $500 or more is not enforceable by way of action or defense unless there is some writing sufficient to indicate that a contract for sale has been made between the parties and signed by the party against whom enforcement is sought or by his authorized agent or broker. A writing is not insufficient because it omits or incorrectly states a term agreed upon but the contract is not enforceable under this paragraph beyond the quantity of goods shown in such writing.

7. Many of these cases cite Comment f to § 178, Restatement of the Law of Contracts, as a basis for their rulings. Comment f, which deals with the statute of frauds, states:

"Though there has been no satisfaction of the Statute, an estoppel may preclude objection on that ground in the same way that objection to the non-existence of other facts essential for the establishment of a right or a defense may be precluded. A misrepresentation that there has been such satisfaction if substantial action is taken in reliance on the representation, precludes proof by the party who made the representation that it was false; and a promise to make a memorandum, if similarly relied on, may give rise to an effective promissory estoppel if the Statute would otherwise operate to defraud."

standing that the contract allegedly violated the statute of frauds. It stated, 469 P.2d at 180:

"It is appropriate for modern courts to cast aside the raiments of conceptualism which cloak the true policies underlying the reasoning behind the many decisions enforcing contracts that violate the Statute of Frauds. There is certainly no need to resort to legal rubrics or meticulous legal formulas when better explanations are available. The policy behind enforcing an oral agreement which violated the Statute of Frauds, as a policy of avoiding unconscionable injury, was well set out by the California Supreme Court. In Monarco v. Lo Greco, 35 Cal.2d 621, 623, 220 P.2d 737, 739 (1950), a case which involved an action to enforce an oral contract for the conveyance of land on the grounds of 20 years performance by the promisee, the court said:

'The doctrine of estoppel to assert the statute of frauds has been consistently applied by the courts of this state to prevent fraud that would result from refusal to enforce oral contracts in certain circumstances. Such fraud may inhere in the unconscionable injury that would result from denying enforcement of the contract after one party has been induced by the other seriously to change his position in reliance on the contract * * *.' "

In *Litterio* the District of Columbia Circuit employed a different rationale for precluding application of the statute

of frauds in a construction bidding case. It held that a subcontractor would be held liable on his bid, not on the basis of a contractual obligation inasmuch as no contract existed, but under the doctrine of promissory estoppel if all the elements of the doctrine were shown to be present. Thereupon the Court commented in a footnote, 319 F.2d at 740:

"The issue as to the applicability of the Statute of Frauds is no longer germane in light of our holding that no contract was created."

■■ I agree with the statement in *Litterio* as to the inapplicability of the statute. The statute of frauds relates to the enforceability of *contracts*; promissory estoppel relates to *promises* which have no contractual basis and are enforced only when necessary to avoid injustice. The Wisconsin Supreme Court clearly stated in *Hoffman* that a promise which could not meet the requirements of an offer that would ripen into a contract if accepted by the promisee is nonetheless enforceable to avoid injustice if the other elements of promissory estoppel are present. To allow defendant to raise the statute of frauds herein as a defense to prevent enforcement of a promise that is actionable under § 90 of the Restatement would defeat the spirit and intent of *Hoffman*. Accordingly, I find the statute is not applicable in an action based on promissory estoppel.[8]

■ Turning now to plaintiff's claimed damages, the rule in Wisconsin is that "Where damages are awarded in promissory estoppel instead of specifical-

---

8. It is noted that § 217A of the Restatement (Second) of Contracts, as contained in the Supplement to Tentative Draft No. 4, 1969, which was also relied upon by the court in *McIntosh*, specifically covers those situations where there has been reliance on an oral *contract* which falls within the statute of frauds. Section 217A states:

"(1) A promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce the action or forbearance is enforceable notwithstanding the Statute of Frauds if injustice can be avoided only by enforcement of the promise. The remedy granted for breach is to be limited as justice requires.

"(2) In determining whether injustice can be avoided only by enforcement of the promise, the following circumstances are significant: (a) availability and adequacy of other remedies, particularly cancellation and restitution; (b) the definite and substantial character of the action or forbearance in relation to the remedy sought; (c) the extent to which the action or forbearance corroborates evidence of the making and terms of the promise, or the making and terms are otherwise established by clear and convincing evidence; (d) the reasonableness of the action or forbearance; (e) the extent to which the action of forbearance was forseeable by the promisor."

ly enforcing the promisor's promise, they should be only such as in the opinion of the court are necessary to prevent injustice." *Hoffman, supra,* 26 Wis.2d at 701, 133 N.W.2d at 276.[9]  I find that the sum of $39,942.40, which represents the difference between what would have been paid for the pipe under defendant's bid and the actual cost to plaintiff in purchasing it from Interpace is a proper item of damages.  However, the damages claimed for the time James Janke spent in attending meetings with the state engineers after the contract was awarded and with the knowledge that defendant would not supply the required pipe are not recoverable under the promissory estoppel doctrine.  These actions were not taken in reliance upon defendant's promise but were part of an effort to get the State to accept defendant's nonspecified pipe.  In other words, they were not induced by defendant's bid.

It is hereby ordered that judgment be entered in favor of plaintiff in the amount of $39,942.40 plus costs.

---

9. Consistent with its distinction between promissory estoppel and breach of contract cases, the court noted in *Hoffman* that it would not allow in the former the full amount of damages recoverable in ordinary breach of contract cases.  26 Wis.2d at 702, 133 N.W.2d at 277.